[Crim. No. 2948. In Bank.—March 29, 1927.]

THE PEOPLE, etc., Respondent, v. JOSEPH SANDOVAL, Appellant.

[1] CRIMINAL LAW—MURDER—CONVICTION AND SENTENCE TO DEATH— MOTION TO SET ASIDE PROCEEDINGS — WRIT OF CORAM NOBIS. — In a prosecution for murder, in which defendant was convicted of murder of the first degree with the death penalty imposed, a motion made after denial of a motion for a new trial and

---

1. See 8 Cal. Jur. 480; 2 R. C. L. 305.

sentence to set aside the judgment and to return the case to the time of arraignment, as far as the legal status is concerned, is an application for a writ of *coram nobis.*

[2] ID.—MOTION TO SET ASIDE JUDGMENT—INSUFFICIENT SHOWING.— In a prosecution for murder, where the defendant, after a plea of not guilty, was given a full and fair trial, in which he and other witnesses for him testified, and he being represented at the arraignment and from that time on by counsel appointed for him by the court, a motion, after a verdict of murder of the first degree, denial of a motion for a new trial, and sentence of defendant to death, made by counsel appearing *amicus curiae,* to set aside the judgment and restore the case to its status upon arraignment, upon the ground that the defendant had plead not guilty by mistake and had desired to plead guilty, should not be granted under the circumstances, as it has no merit in law or in fact.

[3] ID. — SUFFICIENCY OF EVIDENCE. — In a prosecution for murder, where the testimony of an eye-witness to the entire tragedy was introduced, which, although containing certain inconsistencies, the jury was entitled to believe, and the confession of the defendant, several times repeated, that he had slain his common-law wife because of jealousy over her attentions to another man and of her threatened intent to leave him, which confessions were made under circumstances leaving little doubt as to their truth, were introduced in evidence, the evidence was sufficient to sustain a verdict of guilty of murder of the first degree without recommendation of the jury.

[4] ID.—FORMS OF VERDICT—SIGNING BY JUDGE BY MISTAKE.—In a prosecution for murder, where five different forms of verdict were submitted to the jury, the fact that the judge's signature had been inadvertently misplaced upon two of the forms of verdict furnished to the jury does not constitute prejudicial injury sufficient to justify a reversal of the case, where the judge read the forms of verdict to the jury and explained in his instructions the precise form of verdict which it was required to render in the five alternatives presented.

---

(1) 16 C. J., p. 1326, n. 88.   (2) 16 C. J., p. 1327, n. 99 New. (3) 30 C. J., p. 30, n. 3, p. 305, n. 72.   (4) 17 C. J., p. 345, n. 55 New.

APPEALS from a judgment of the Superior Court of Ventura County and from an order denying a new trial and from an order denying a motion for a writ of *coram nobis.* Merle J. Rogers, Judge.   Affirmed.

---

3.  See 13 Cal. Jur. 740.

The facts are stated in the opinion of the court.

Pierce & Gould for Appellants.

Drapeau, Orr & Gardner, *Amici Curiae.*

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, Edward Henderson, District Attorney, and James C. Hollingsworth, Deputy District Attorney, for Respondent.

RICHARDS, J.—There are in this cause two appeals which are presented upon separate transcripts, but to be considered together. One of these is an appeal from the judgment of conviction of the defendant of the crime of murder in the first degree without recommendation by the jury and from the order denying his motion for a new trial. This appeal was taken by the defendant's regular attorneys of record acting on his behalf. The other appeal is one taken and prosecuted from an order of the trial court, made and entered after final judgment, denying a motion made on behalf of said defendant by certain counsel, appearing in the capacity of *amici curiae* for the purpose of presenting said motion on behalf of the defendant and of taking an appeal from the order of the court denying the same. We shall first in order consider the latter appeal. The facts out of which said appeal arose are these: During the trial of the cause before the superior court in and for the county of Ventura, Mr. E. S. Gardner, a member of the law firm of Drapeau, Orr & Gardner, was present in court and became apparently much moved with sympathy for the unfortunate plight in which the defendant appeared to be, and was impressed with the belief that on account of certain happenings prior to and during the course of said trial the defendant was not being accorded or receiving the full benefit of those rights and privileges to which those who are charged with and being tried for crimes are entitled. [1] Accordingly after the trial was over and after the defendant had been convicted of the crime of murder in the first degree without recommendation; and after the motion for a new trial made by his regularly appointed counsel had been denied; and after the defendant had been sentenced to suffer the

extreme penalty of the law, Mr. Gardner, acting for his said firm of attorneys, applied to the court for and was granted permission in the capacity of *amici curiae* to present orally a motion which he denominated "a motion to set aside the judgment in this case and return the case to the time of arraignment as far as the legal status of the case is concerned." The motion, while thus denominated, was, in effect, an application for a writ, *coram nobis* and was apparently treated as such in the argument and citation of authorities by counsel in presenting the same. It is true that counsel in presenting his said motion stated that the remedy which he was seeking thereby was so broad as would if granted have enabled the defendant to go back so far in the proceedings against him as to withdraw his original plea of "Not Guilty" and to interpose a different plea; but this does not avail to change the essential nature of his motion as being in purpose and effect an application for a writ *coram nobis*. The trial court, while expressing itself in doubt as to its jurisdiction to entertain such an application, permitted said counsel to make the same and to support it with a full showing of the facts upon which it was asserted to be predicated. These facts were, briefly stated, as follows: Shortly after the arrest of the defendant for the murder of the woman with whom he was then living as his common-law wife, he stated to the arresting officers that he was "going to plead guilty and take his medicine." On several other occasions between that time and the time of his arraignment he made similar statements as to his intention to plead guilty. At the time of his arraignment the defendant was asked by the court if he had an attorney; he replied that he had not and had no means to employ an attorney, and if any attorney was to represent him the court would have to appoint one. The court thereupon appointed the firm of Pierce & Gould to represent the defendant and a continuance was had until the afternoon at the request of the defendant's said counsel. When the case was again called, both sides answering ready, Mr. Gould, of said firm, stated on behalf of the defendant that he would waive the reading of the information "and enter a plea of not guilty at this time." He further stated that "we will look into the matter very carefully and if it is advisable to change the plea at a later time we will do so." The court thereupon directed the de-

fendant to stand up and inquired directly of him whether he waived the formal reading of the information, to which the defendant replied in the affirmative, whereupon the court stated, "You know, however, that you are charged in this information with the crime of murder, with having killed one Julia Lopez about the 27th day of June of this year; that is what is charged against you!" The defendant: "Yes sir." The court: "And to this information do you plead guilty or not guilty?" The defendant: "Not guilty for the present." The court thereupon directed the defendant's plea of "Not Guilty" to be entered and set the cause for trial for a date satisfactory to his counsel. At the time of the trial the defendant and his counsel were in court and answered ready without any attempt or suggestion of an intent to withdraw said plea. The cause proceeded to a trial before a jury extending over several days, during which the circumstances preceding and attending the homicide were fully gone over, the testimony of an eye-witness to the crime was given with the fully exercised right of cross-examination; the several confessions of the defendant were rehearsed. The defendant himself was sworn and testified on his own behalf. Certain other witnesses also testified for the defense. The cause was argued by respective counsel and was finally submitted to the jury for decision after a full set of instructions by the court had been given. In the course of giving said instructions the court read and explained to the jury five several forms of verdict, that is to say, a verdict of murder in the first degree, without recommendation; a verdict of murder in the first degree, with recommendation fixing the punishment at life imprisonment; a verdict of murder in the second degree; a verdict of manslaughter, and a verdict of not guilty. These five several forms of verdict when thus read by the court were handed to the jury. In some way not fully explained the signature of the judge had been placed upon two of these forms of verdict on the line affixed for the signature of the foreman of the jury. These two forms of verdict were those relating to the verdict of murder in the second degree and the verdict of not guilty. There is no echo in this record from the jury-room as to how that body regarded the matter of the evident misplacing of the name of the trial judge upon these two forms of verdict, but the fact is that the jury

returned a verdict of guilty without recommendation and was duly discharged. Thereafter the court fixed the time for pronouncing judgment at several days later, at which time the defendant and his regular counsel being present in court, the defendant's motion for a new trial was duly presented in writing, setting forth seven separate grounds why such motion should be granted but setting forth no such ground as that herein urged, viz., that the defendant had mistakenly entered or had entered for him upon his arraignment a plea of not guilty. The motion for a new trial after being argued by respective counsel was denied by the court, whereupon the court proceeded to obtain such information as to the defendant's antecedents and his family as is required in certain cases under section 1192a of the Penal Code; and for that purpose placed the defendant upon the witness-stand. From the examination which then ensued it appeared that the defendant, while a Mexican as to his ancestry, was a native-born citizen of the United States of the age of forty-six years, born and reared in the county of Ventura, speaking, reading, and writing both the English and Spanish languages and having attended for a time, at least, the public schools of his native place. After these facts had been elicited from the defendant the court proceeded to pronounce sentence, in the course of which it inquired of the defendant whether he had any legal excuse to offer why the judgment of the court should not then be pronounced. The judge upon making this inquiry understood the defendant to state that he had not, and thereupon proceeded to pass judgment upon him affixing the penalty of death. Counsel of record for the defendant then gave notice of appeal, and the defendant was removed from the courtroom. Shortly thereafter, however, it was made known to the court that it had misunderstood the defendant and that he had something to say why judgment should not be pronounced. The defendant was thereupon returned to court and upon inquiry stated that he had something to say why judgment should not be pronounced; and the court, stating that it had misunderstood him, proceeded to hear his statement. The defendant then made the following statement: ''Well, when I first came in here before your Honor I intended to plead guilty right here, but my attorney advised me not to, so that is the reason I did not, and I hadn't no chance to explain myself, so that is the

reason why I didn't spoke any more. I told Mr. Suytar when he took me up there that I wanted to plead guilty and save the expense of the county. . . . What I mean is that I just wanted to plead guilty as soon as I came before you, and I was advised not to, and that is how I stood trial." The court upon hearing the foregoing statement replied that it furnished no legal excuse which would give the court authority or power to stay the imposition of the judgment, and that the judgment as pronounced would stand. It then repeated the substantial portion of its former judgment affixing the death penalty, and noted the defendant's appeal to the supreme court. At the afternoon session of the court Mr. Gould, representing his firm, arose in court to ask the court to dismiss his firm from the case upon the ground that the defendant, having at the morning session of court made a statement indicating that he was dissatisfied with his attorneys, it might be possible that he would wish through other attorneys to urge executive clemency on account of their handling of his case. The court stated that he knew of no misconduct on the part of counsel and had no disposition to relieve them of their further duties in or connected with the case, but, on the other hand, suggested that they continue to take every legal step required to perfect an appeal and preserve to the defendant every right of appeal which he might have. [2] Several days later Mr. E. S. Gardner appeared in court to state that moved by his sympathy for the defendant and under the belief that he had not been accorded all of his rights in the premises he would ask permission as *amicus curiae* and on the defendant's behalf to move to set aside the judgment and restore the cause to the condition in which it stood when the defendant was arraigned, in order that the defendant might withdraw his plea of not guilty and present a plea of guilty as he had at first intended. The court permitted Mr. Gardner, or rather his firm, to act as such *amici curiae* in the premises and to present such motion, though doubtful of its jurisdiction to hear and determine the same. Whereupon all of the foregoing facts were fully presented to the court and the matter being then argued and submitted to the court for its decision, the court rendered its decision as follows: "So far as this matter is concerned, I do not see that it effects the defendant one way or the other; and on the merits of the

motion Mr. Gardner has made, I have given it a good deal
of consideration, and while I have no doubt in my own mind
that the statements of the witnesses as to the declarations
made by the defendant with reference to his intention to
plead guilty and his desire to plead guilty in this case are
true, and that he said he was persuaded or prevented by
his counsel from doing so, and that the defendant made those
statements or declarations as and when testified to by the
witnesses, as a legal proposition I cannot see that the Court
has any power to interfere with the situation even if we
were to reach the conclusion that the Court should so inter-
fere. The defendant was represented by counsel and a trial
was had, I believe a fair and impartial trial, and the defend-
ant submitted himself to this tribunal, and I know of no
authority in the Court at this time to set aside his judg-
ment or to permit now a withdrawal of the plea of not guilty
and the interposition of a plea of guilty, and the motion
will have to be denied.''

It is from the foregoing order that the second appeal
herein has been taken. There is no merit either as a matter
of law or as a matter of fact upon the record before us in
the contentions of counsel acting as *amici curiae* upon this
second appeal. The case of *People* v. *Perez,* 9 Cal. App. 265
[98 Pac. 870], even if regarded as authority for such a
proceeding in cases where no trial of the defendant had
been had but a plea had been obtained by some character
of duress or the trial was affected by some outside force, has
no application to the facts of the instant case wherein no
duress of any kind was exercised and where the defendant's
trial had been regular in all respects. The very limited class
of cases to which the writ of *coram nobis* would be applicable
under our statutory forms of procedure, of which it has
never been expressly made a part, was very fully considered
by this court in the cases of *People* v. *Mooney,* 178 Cal. 525
[174 Pac. 325], and *People* v. *Reid,* 195 Cal. 249 [36 A. L. R.
1435, 232 Pac. 457], and it is clear that under these
authorities the trial court properly denied this applica-
tion, considered as an application for a writ *coram nobis.*
And, if said application were to be considered as an
application for any other or broader remedy than that
strictly permissible under *coram nobis,* it would also have
been properly denied upon the ground that the facts were

200 Cal.—47

fully known and the remedies fully available to the defendant upon his motion for a new trial and upon his appeal from the order denying such motion. (*People* v. *McCoy,* 71 Cal. 395, 398 [12 Pac. 272] ; *Wood* v. *Moulton,* 146 Cal. 317, 322 [80 Pac. 92].) An examination of the record upon the first appeal discloses that the contention that the defendant was injuriously affected by the fact that the name of the trial judge was inadvertently ` affixed to certain of the forms of verdict above adverted to is fully presented and argued upon that appeal and will be there given due consideration. For the foregoing reasons the second appeal herein is dismissed.

[3] As to the first or main appeal of the defendant from the judgment of conviction and order denying a new trial herein it requires but brief attention. There is no merit in the appellant's contention that the evidence in the case was insufficient to sustain the verdict. Aside from the fact that there was an eye-witness to the entire tragedy, whose testimony, notwithstanding certain inconsistencies, the jury was entitled to believe, there was also the confession several times repeated by the defendant that he had slain his common-law wife because of jealousy over her attentions to another man and of her threatened intent to leave him, which confessions were made under circumstances which left little doubt as to their truth. These fully justify the verdict of the jury even conceding the state of intoxication in which the defendant may have been when he came to the actual moment for the commission of his crime, and which in itself furnishes no excuse for its perpetration. (Sec. 22, Pen. Code; *People* v. *Sainz,* 162 Cal. 242, 245 [121 Pac. 922] ; *People* v. *Yeager,* 194 Cal. 452, 474 [229 Pac. 40] ; *People* v. *Casade,* 194 Cal. 679, 687 [230 Pac. 9].) [4] As to the final contention of the defendant that he sustained some prejudicial injury from the fact that the judge's signature had been inadvertently misplaced upon two of the forms of verdict furnished to the jury, we are unable to perceive enough of merit to justify a reversal of this cause. The jury had already had read and explained to it in the court's instructions the precise form of verdict which it was required to render in the five alternatives presented to it in arriving at its verdict. Having been so explicitly advised its members as intelligent men could not well have been

misled by the presence upon one or more of these forms of verdict of the name of the judge in a place thereon where it had no reasonable business to be.  To strike out the misplaced name of the judge and insert the name of the foreman of the jury in case that body had agreed upon either of said forms of verdict would have been the altogether reasonable thing to do; while the substitution instead of the most drastic form of verdict submitted to it would be the altogether unreasonable thing for the jury to do unless its members were agreed upon that extremer form of verdict, in which event it would be quite immaterial what the rejected forms of verdict contained.

We perceive no error in this record.  The judgment and order are affirmed.

Langdon, J., Curtis, J., Shenk, J., Waste, C. J., Seawell, J., and Preston, J., concurred.

Rehearing denied.

Preston, J., and Langdon, J., dissented.