[Crim. No. 2337.   First Dist., Div. One.   Aug. 18, 1945.]

THE PEOPLE, Respondent, v. EDWARD BUTLER, Appellant.

Joseph P. Lacey, Harmon D. Skillin and George Olshausen for Appellant.

Robert W. Kenny, Attorney General, David K. Lener, Deputy Attorney General, Edmund G. Brown, District Attorney, and James F. Brennan, Chief Trial Deputy District Attorney; for Respondent.

PETERS, P. J.—Defendant appeals from a judgment of conviction of second degree robbery and from orders denying his motions to be permitted to withdraw his plea of guilty and to vacate the judgment. There is no merit in these appeals.

Defendant and Patricia Hollis, on July 20, 1944, were charged by information with robbery in that on May 23, 1944, they forcibly took from one Ben Rodriguez $60 in money, an

automobile, and a wrist watch of the value of $680. Several continuances to plead were granted. On August 7, 1944, the defendant pleaded not guilty. The trial was thereafter continued until October 6, 1944. On that date the codefendant Hollis was a fugitive from justice. The defendant, through his counsel, requested that he be permitted to withdraw his plea of not guilty and substitute therefor the plea of guilty. This request was granted. A hearing was then held to determine the degree of the crime and, after such hearing, the court determined the crime to be second degree robbery. Such offense is punishable by imprisonment in the state prison for not less than one year (Pen. Code, § 213), no discretion being granted, as in the case of second degree burglary (Pen. Code, § 461), to imprison in the county jail. The court thereupon sentenced defendant to San Quentin for the term prescribed by law. Defendant then moved for probation. The sentence was set aside and argument on the motion for probation put over to October 10th. On that date the court took further evidence from the arresting officer, considered the past record of the defendant, which showed that defendant some fourteen years before had been fined $2,000 for taking an automobile without the owner's consent, and, on another occasion, had been convicted of an assault with a deadly weapon for which he served six months in the county jail, listened to the arguments of counsel, and denied probation. The defendant was then re-sentenced to the state prison, the only lawful sentence that could be imposed for such a crime where probation has been denied. Defendant then orally moved to vacate the judgment and requested permission to withdraw his plea of guilty. In support of these motions one of his attorneys took the stand. He testified that the defendant was in the Navy, and that he had advised him "that he could have reasonable assurance that he would be—could be returned to the Navy after the possibility of serving some time in the County Jail. . . . I interviewed the defendant on several occasions in the County Jail, and gave him all of the encouragement that I could, and I told him that in my opinion and from my experience and from what I believe had gone on in prior actions of the courts of this City and County, on prior occasions——

"The Court: How does that affect me?

"Mr. Lacey: There were other boys in the Navy and there [are] other members in this court who had sent the men to the Navy on similar or like charges.

"Based upon what I had heard in the matter, I so advised this boy that the best thing to do here was to plead guilty and ask for leniency of the court." The lawyer went on to testify that defendant had told him that on the night of the robbery "he was so far under the influence of liquor that he did not know what had happened"; that the defendant had told him that he had no knowledge of the assault, and had no recollection of taking the watch from the complaining witness; that his companion must have taken the money. The motions were denied, and defendant filed a notice of appeal.

Thereafter defendant filed a written notice for a hearing de novo of his motions. These motions were supported by the affidavit of defendant. The deputy district attorney filed a counter-affidavit. On November 2, 1944, the court held a hearing and denied the motions. Defendant appeals from the order of denial.

■   The factual background of this case as disclosed by the testimony of the complaining witness, the investigating officer and of defendant is as follows: On the evening of May 23, 1944, defendant and Patricia Hollis were drinking in various taverns. Defendant testified that he had met Patricia for the first time that night. The investigating officer testified that in fact the girl and defendant had been registered at a Pine Street hotel as husband and wife prior to May 23d. Sometime during the evening the complaining witness Rodriguez met the defendant and Patricia and the two men and the girl made the rounds of several taverns. About closing time the defendant invited Rodriguez to his and Patricia's hotel room to continue their drinking activities. Rodriguez gave defendant $10 to buy some liquor and then the three proceeded to a hotel, driving in Rodriguez's automobile. At the hotel Patricia registered herself and defendant under a fictitious name as husband and wife, and the three proceeded to the hotel room. Rodriguez testified that they had a couple of drinks and the girl was getting another drink when defendant, without provocation, and without warning, hit him on the chin and knocked him unconscious. He was unconscious for several hours and when he came to, $60 or $65, his wrist watch, and his automobile were gone. His jaw was badly fractured and permanently injured. He was in the hospital for a month and a half, and off work another month. Two operations were necessary. He also testified that when hit by defendant the keys to his automobile were in his pocket. Several days after

these occurrences defendant and Patricia admittedly pawned Rodriguez's watch.

The arresting officer testified that after arresting defendant and Patricia he questioned them and they told conflicting stories; that defendant admitted hitting Rodriguez, but claimed he did so because Rodriguez got familiar with the girl; that the girl told him, in the presence of defendant, that nothing like that had happened; that Rodriguez, neither by words or actions, had insulted her; that defendant remained mute; that defendant admitted taking the automobile and driving to another hotel, and admitted pawning the watch.

Defendant's version of the affair was that he had met Patricia for the first time that night; that then they met Rodriguez; that the three made the rounds of several taverns; that they then went to the hotel where Patricia registered them as man and wife; that Rodriguez was molesting the girl and he ordered Rodriguez to leave and he refused to do so; that after hitting Rodriguez he did not take the keys to the car because with the owner's consent he already had them; that he did not take the money or the watch; that he did not see the girl take them; that several days later the girl told him that she had taken the watch.

This testimony was all introduced on the hearing to determine the degree of the crime. It is obvious that on this evidence the trial court was justified in believing that this was a most aggravated case. It is a reasonable, if not an inevitable, inference from the evidence that this defendant and his codefendant deliberately and with premeditation enticed Rodriguez to the hotel room for the purpose of robbing him; that defendant slugged Rodriguez without provocation and for the purpose of robbing him; that defendant and Patricia then robbed Rodriguez, stole his automobile, went to another hotel where they registered as man and wife, and then, several days thereafter, sought to capitalize on their venture by pawning the watch. The victim was seriously injured. That this testimony, plus the plea of guilty, justified the trial court in fixing the degree of the crime as second degree robbery and in denying probation is too obvious to require further comment.

On October 6th, which was the day set for the trial of defendant and the day he pleaded guilty, the record shows that the following occurred. It developed that the codefendant Patricia Hollis had jumped bail and was a fugitive. The court

determined to try defendant on his plea of not guilty. Before the plea of not guilty had been withdrawn the court stated: "Somebody said this is an outrageous case." Shortly thereafter the deputy district attorney stated: "If he pleads guilty to second degree robbery they can't take him in the Navy. I understand, Judge, that this is a very aggravated case." After these preliminaries the defendant withdrew his plea of not guilty and pleaded guilty to robbery.

In his affidavit in support of his last motion to vacate the judgment and to be permitted to withdraw his plea of guilty the defendant avers that he is 30 years of age; that he is in the Navy and stationed at Treasure Island; that he pleaded guilty on the advice of counsel; that he is not guilty of robbery. He then sets forth his version of the facts, including a statement that he was intoxicated on the night in question. He also avers that the three persons consumed nearly a quart of whisky, and that Rodriguez began to pay "attentions" to Patricia; that an argument arose; that Rodriguez attempted to strike defendant and defendant hit him back. This is the first time, so far as the record shows, that defendant ever claimed he struck in self-defense. He avers that he did not take the money, the keys, or the watch, but admits taking the automobile and driving to another hotel with Patricia where the two spent the balance of the night. He again states that several days later Patricia told him that she had taken the watch, and the two pawned it. He avers that he told his counsel these facts and was informed by them that these facts would constitute a defense. In explaining why he pleaded guilty he avers that in the discussions with his counsel he was "informed that the Navy boys charged with felonies in this city and county were being turned over by the Superior Courts to the Navy and that they believed and so advised affiant that he had every justification for hoping that would be the ultimate disposition of the charge"; that on several occasions while affiant was in the county jail his counsel told him that "he should hope" to have this disposition made of his case; that his counsel told him that it was their belief and the belief of "many other persons" that service men accused of felonies were customarily permitted to return to the service; that he told his counsel that he had heard of many cases of persons in the armed forces accused of burglary or robbery who had been permitted by the courts to return to the service and

that "he, himself, believed and hoped that he would receive similar lenient consideration"; that affiant is informed and believes that between 15 and 20 defendants accused of felony charges in San Francisco have been returned to the service, naming four such persons by name; that a week before he was sentenced he knew a defendant charged with burglary who, upon a plea of guilty, was permitted to re-enter the Navy; that he discussed his case with this accused person and was advised by him to plead guilty and that if he did so he probably would be permitted to re-enter the Navy at once; that cellmates told him of similar cases; that it was the general belief of inmates of the county jail that members of the armed forces charged with burglary or robbery, upon a plea of guilty, would be returned to the service; that during this period he "continuously hoped and believed" that he would be permitted to plead guilty to a lesser offense and be returned to the Navy; that on the day of his trial and after a short consultation with his attorneys, he entered the plea of guilty believing and anticipating that he would immediately be returned to the Navy; that before entering the plea his counsel told him "that he should have every reason to expect and hope that such disposition would be made of his matter as would result in his prompt return to the Navy for a continuance of his service therein. That thereupon and by reason of the matters and things set forth and not by reason of any consciousness of guilt of the charge, affiant, honestly and sincerely believing that he would be permitted to return to the Navy for combat service in defense of his country agreed to withdraw his plea of not guilty heretofore entered and enter a plea of guilty to the instant charge."

This affidavit and the testimony of Attorney Lacey on the oral motion constitute the basis of defendant's contention that the trial court abused its discretion in refusing to permit him to withdraw his plea of guilty after he had ascertained that probation would not be granted. The counteraffidavit of the deputy district attorney avers that prior to the date defendant pleaded guilty he informed defendant's attorney that his office would not accept a plea to guilty to any lesser offense than the one charged; that neither he, nor anyone on the district attorney's staff, has ever suggested to the attorney for defendant, or to the defendant, that defendant would be permitted to return to the Navy if he pleaded guilty;

that neither the court nor the district attorney made any representation concerning, or made any reference to, the degree of punishment that would be imposed if defendant pleaded guilty.

It will be noted that it is not contended that the prosecuting officials or the trial judge in any way contributed to defendant's belief that he would not be sent to state prison if he pleaded guilty—in fact, the record shows, that defendant knew before he withdrew his not guilty plea that the prosecuting officials considered the case a most aggravated one and would accept no plea less than second degree robbery—an offense punishable only in the state prison. Although it is alleged that some other servicemen charged with robbery or burglary had been permitted to plead guilty to a lesser offense and were then returned to the Navy, it is not alleged that the facts of these cases were the same or similar to those in this most aggravated case, or that other servicemen charged with these offenses had not been sent to San Quentin. It seems to be the thought of appellant that because some judges other than this trial judge had on occasion, after considering the facts of particular cases, accepted pleas of guilty to lesser offenses or granted probation to servicemen, that a custom had been created upon which he was entitled to rely, and that when this trial judge, on the facts of this particular case, refused to follow this supposed custom, he was so far misled that he is entitled, as a matter of law, to withdraw his plea of guilty. Defendant cannot thus be permitted to make a mockery of the legal processes. This defendant pleaded guilty knowing or chargeable with knowledge that the only sentence that could lawfully be imposed for second degree robbery was imprisonment in the state prison. He and his counsel undoubtedly hoped that probation would be granted. If probation were denied, however, they could then move to withdraw the plea of guilty. In this fashion they could find out on the hearing fixing the degree of the crime what evidence the prosecution had. They knew that Patricia was a fugitive from justice and all blame could be placed on her shoulders because Rodriguez was unconscious after the blow and Patricia was not there to defend herself. After the court very properly had denied probation they then sought to withdraw their plea of guilty. Under the circumstances here existing the trial judge very properly denied the motion.

The law applicable to this problem is well-settled. A plea of guilty may be withdrawn for mistake, ignorance or inadvertence or any other factor overreaching defendant's free and clear judgment. ▮ Although the permission to withdraw the plea is within the trial court's discretion, courts are, in general, liberal in allowing the plea to be withdrawn, especially where there is doubt of defendant's guilt. ▮ A motion to vacate judgment and withdraw a plea of guilty is in the nature of a writ of error *coram nobis*. The judgment will be vacated only where some fact exists which, if before the court, would have prevented rendition of judgment, and which, without fault or negligence of the party, was not presented in court. The fact of mistake, fraud, or duress must be established by convincing evidence in order to entitle the defendant to relief from a guilty plea, and the appellate court may conclude that it is properly denied where defendant acted with knowledge or on the advice of his attorney. (*People* v. *Sandoval,* 200 Cal. 730 [254 P. 893] ; *People* v. *Deutsch,* 16 Cal.App.2d 121 [60 P.2d 155] ; *People* v. *McCrory,* 41 Cal. 458.) ▮ Defendant cites a few cases from outside the state holding that a defendant induced to enter a guilty plea solely on the representations of his attorney should be permitted to withdraw it. That is not the law in this state. (*People* v. *Miller,* 114 Cal. 10 [45 P. 986] ; *In re Hough,* 24 Cal.2d 522 [150 P.2d 448] ; *People* v. *Gottlieb,* 25 Cal.App.2d 411 [77 P.2d 489].)

The law applicable to this entire problem has been recently restated by the Supreme Court in *People* v. *Gilbert,* 25 Cal. 2d 422 [154 P.2d 657]. In that case the defendants pleaded guilty to murder and were sentenced to the death penalty. After the judgment became final they sought to withdraw their pleas of guilty. On the motions the trial court reduced the punishment to life imprisonment. Conflicting affidavits were filed before the trial court. Those of defendants unequivocally charged that their lawyer had informed them that he had reached a definite agreement with the trial judge for a life sentence if they would plead guilty. The affidavits of the judge and deputy district attorney admitted discussing the matter with defendants' counsel and making statements that at least could be interpreted as indicating they believed a life sentence was all that was called for. The Supreme Court properly indicated that under such circumstances the free will and judgment of the defendants were overreached.

In so holding, the court stated the proper rule as follows (p. 442):

"The record discloses evidence tending to show that the free will and judgment of one or both defendants were overreached by unjustified representations of their counsel seemingly corroborated by acts and statements of the court and deputy district attorney. While it is true that mere advice or assurances by a private attorney will not vitiate a plea entered in reliance thereon (see *People* v. *Miller*, 114 Cal. 10, 16 [45 P. 986]; *In re Hough*, 24 Cal.2d 522, 531 [150 P.2d 448]; *People* v. *Gottlieb*, 25 Cal.App.2d 411, 415 [77 P.2d 489]) we are of the view that a contrary rule should prevail if the statements of the attorney amount to an unqualified factual representation (which is untrue) that the state or a responsible officer thereof, such as a judge of competent authority or a district attorney, has entered into a bargain purporting to commit the state to give the defendant a reward, in the form of immunity or a lesser punishment than he might otherwise receive, in exchange for a plea of guilty, where such representation is apparently substantially corroborated by acts or statements of a responsible state officer, is in good faith relied upon by the defendant, and actually operates to preclude the exercise of free will and judgment on the part of the defendant.

"The most critical point is substantial deprivation of the exercise of the free will and judgment of the party through an act participated in by the state. Mere advice and persuasion or the expression of matters of opinion by his own attorney will not suffice to vitiate the plea. Neither will unwarranted or even wilfully false statements of factual matters by his attorney suffice. The private attorney is selected by the party and is his agent. But if the representation of the private attorney presents a purported commitment by a responsible state officer which if actually made would vitiate the plea and if the acts or statements of such state officer, although innocently done or made, apparently corroborate the representation, are in good faith and without negligence relied upon by the defendant, and in truth operate to prevent the exercise of his free will and judgment, then the state in its solicitude for fairness will not accept the benefit of a plea so given."

Defendant in this present case fails to bring himself within this rule. Here there were no representations by the trial

court or the prosecuting officials corroborating the representations of the private attorney. Here the defendant and his counsel made the mistake of relying, if they did, on the fact that, because other judges in cases involving different facts had seen fit to grant leniency, this judge would follow such supposed custom.

The judgment and orders appealed from are affirmed.

Knight, J., and Ward, J., concurred.