[Crim. No. 2538.   First Dist., Div. One.   Nov. 23, 1948.]

THE PEOPLE, Respondent, v. LOUIS MARTINEZ, Appellant.

Elizabeth Cassidy for Appellant.

Fred N. Howser, Attorney General, Clarence A. Linn, Deputy Attorney General, J. F. Coakley, District Attorney, and Robert H. McCreary, Assistant District Attorney, for Respondent.

PETERS, P. J.—On March 17, 1940, Annie Martinez, age 20, was killed. Her husband, Louis Martinez, was charged with her murder. He first pleaded not guilty, but later, in open court, and in the presence of his then attorney, he requested and secured leave to withdraw the plea of not guilty, and pleaded guilty to ''murder as charged in the information.'' On June 18, 1940, the court fixed the degree as murder of the first degree, and sentenced defendant to life imprison-

ment. No appeal was taken. On March 8, 1948, nearly eight years later, defendant moved the trial court to vacate the judgment of conviction and requested leave to withdraw his plea of guilty to murder, and to substitute a plea of manslaughter. The motion was supported by the affidavit of defendant, and the prosecution filed counteraffidavits. A hearing was had and the trial court denied the motion. This appeal is from that order of denial.

■ Although this proceeding was denominated below as a motion to vacate, it is properly a petition for a writ of error *coram nobis*. (*People* v. *Gilbert*, 25 Cal.2d 422 [154 P.2d 657] ; *People* v. *Harincar*, 49 Cal.App.2d 594 [121 P.2d 751] ; *People* v. *Superior Court*, 28 Cal.App.2d 442 [82 P.2d 718].)

■■ The proceeding is not an independent one but is regarded as part of the original prosecution, and the order denying the relief sought is appealable as an order made after judgment. (*In re Paiva*, 31 Cal.2d 503 [190 P.2d 604].)

The petition below was based on the alleged grounds (1) that at the time defendant withdrew his plea of not guilty and pleaded guilty, he did not understand the import of his plea, and thought, because his two attorneys, Sullivan and Ferrario, had so advised him, that he was pleading guilty to second degree murder, and that he would be released from prison within a couple of years; (2) that he was not advised that he could, nor was he permitted to, testify on his own behalf, and the judgment was based entirely on the testimony of one Louise Diaz, who was not an eyewitness and who was biased against him; and (3) that the evidence was insufficient to show first degree murder and showed at most, if it showed any crime, manslaughter.

The trial court had before it the judgment roll of the previous proceeding, appellant's affidavit, in which he alleged the above grounds and recited his version of what happened the night his wife was killed in his apartment, and the affidavits of Sullivan and Ferrario, defendant's attorneys at the time of his conviction, denying that they had advised defendant that he was pleading guilty to second degree murder, and denying that they had advised him that he would be out in any particular time. In addition, the trial court had before it the transcription of the proceedings had at the time of sentence. It appears that the original trial judge had before him, at the time he fixed the degree as first degree murder, a transcription of the preliminary examination and

certain "statements," apparently statements given by the defendant to the district attorney after his arrest.

A reading of the preliminary examination shows that the wife of defendant was killed in the apartment of defendant by being stabbed twice in the heart with a fruit knife belonging to defendant. The parties had separated, and the wife was living with Louise Diaz and another girl. On the day in question defendant visited his wife at her place of employment and got some money from her, and then waited for her until her quitting time. At that time, in the presence of the witness Louise Diaz, he insisted that his wife come to his apartment, and the two parties quarreled and argued about this on the street. Finally, the decedent agreed to go to the apartment with her husband, and told Louise that she would return in half an hour. About an hour later, the decedent not having returned, Louise went to defendant's apartment, and found it locked. She knocked and was answered by defendant, who refused to let her in. She testified that at that time she heard the decedent crying and asking defendant to let her (Louise) come in; that she heard decedent say "Louis, don't," about three times, and heard her state that she would not leave; that she, the witness, then left and got two men to return with her; that she was gone less than five minutes; that when they returned the door was locked, and there was no response to their knocks; that they forced the door open and found decedent lying on the bed with a knife in her chest, apparently dead. Defendant was gone, and was arrested several days later.

The record also shows that at all stages of the proceedings defendant was present in court, and at all times was represented by either Sullivan or Ferrario, counsel of his own choice. It also shows that when the trial court fixed the degree as first degree, defendant was asked whether he had any legal cause to show why judgment should not be pronounced, and replied that he had none. He was thereupon sentenced to life imprisonment.

In his affidavit filed in support of the petition for *coram nobis* about eight years after the fixing the degree of the crime, and filed after the trial judge and the prosecuting attorney had died, defendant gives his version of what happened in his apartment on the fatal day. He avers that his wife had left him, and was then living with Louise; that Louise was a bad influence on his wife; that his wife came to his apartment on the fatal afternoon and defendant told her that he

was going to Hawaii, and that he would take her; that they quarreled about her friendship with Louise and about her insistence that Louise be invited to go to Hawaii with them; that when Louise came to the door he opened it and invited her to come in; that Louise refused and told his wife that she would wait for her in front of the building; that he then closed the door; that his wife picked up the fruit knife and threatened to use it unless he invited Louise to come with them; that he got mad and reached for her, intending to throw her out of the apartment; that his wife then kicked him in the stomach; that he lost his breath, became dizzy, and fell against the table upon which his wife had placed the knife; that then everything went blank; that he does not remember picking up or using the knife; that he may have stabbed her or she may have stabbed herself; that he was sick for several days; that he then visited his mother and she told him he had killed his wife; that he then gave himself up to the police.

On this appeal the defendant lists some 19 reasons why he claims the denial of his petition was erroneous. Many of the reasons are repetitious, and all of them are without merit. They all center around three main contentions: First, a claimed excusable mistake on the part of defendant in withdrawing his plea of not guilty and pleading guilty, it being contended that lapse of time is no bar to this contention; second, that his counsel did not advise him properly at the time of his original trial, so that he did not have a fair hearing and was denied due process of law; and third, that the evidence does not support the finding of first degree, in that it failed to show premeditation or malice.

The writ of error *coram nobis* never issues to correct an error of law, nor to redress an irregularity occurring at the trial that could be corrected on motion for new trial or by appeal. It is issued to correct an error of fact, existing at the time of trial but unknown to the trial court through no fault of the petitioner, and which fact, had it been known, would have resulted in a different judgment, or would have prevented the rendition of the challenged judgment. (A few of the many cases so holding are *People* v. *Reid,* 195 Cal. 249 [232 P. 457, 36 A.L.R. 1435]; *People* v. *Tuthill,* 32 Cal.2d 819 [198 P.2d 505]; *People* v. *Mooney,* 178 Cal. 525 [174 P. 325]; *People* v. *Hightower,* 75 Cal.App.2d 298 [170 P.2d 490]; *People* v. *Darcy,* 79 Cal.App.2d 683 [180 P.2d 752]; *People* v. *Knight,* 73 Cal.App.2d 532 [166 P.2d 899]; *People*

v. *Kretchmar,* 23 Cal.App.2d 19 [72 P.2d 243]; *People* v. *Butterfield,* 37 Cal.App.2d 140 [99 P.2d 310]; *People* v. *Butler,* 70 Cal.App.2d 553 [161 P.2d 401].)

These cases dispose of the contentions that the evidence produced on the hearing at the time of fixing the degree of the crime was insufficient to show first degree and, at most, showed manslaughter; that if his counsel had not advised him improperly to plead guilty he would never have been convicted of first degree murder; that by failing to move for a reduction of the degree of the crime, or by failing to appeal, his counsel caused him to be deprived of his liberty without due process. The choice of counsel was defendant's. It was at all times within the power of defendant to choose his own counsel or to appeal. The claimed errors set forth above (assuming they were errors) were, at most, errors of law that could have been corrected on appeal or motion for a new trial.

Likewise without merit is defendant's contention that he was not permitted to, nor advised that he might, give testimony on his own behalf. The record shows that defendant was advised by the trial judge that he was entitled to an attorney at all stages of the proceedings, and that he announced that he had an attorney of his own choice. The record also shows that he was represented by one of his two attorneys at all important stages of the proceedings. It also shows that after fixing the degree, and before pronouncing sentence, the trial judge asked defendant if he had any legal cause to show why judgment should not be pronounced against him, and he answered that he had not.

Another complete answer to all contentions made in reference to reliance on the alleged misrepresentations or bad advice of his counsel is to be found in the well-settled rule of law that reliance on the advice or assurances of private counsel is not sufficient to vitiate a plea entered in reliance thereon, in the absence of proof that the judge or prosecuting attorney participated directly or indirectly in the alleged misrepresentations. (*People* v. *Miller,* 114 Cal. 10 [45 P. 986]; *In re Hough,* 24 Cal.2d 522 [150 P.2d 448]; *People* v. *Gottlieb,* 25 Cal.App.2d 411 [77 P.2d 489].) The proper rule was stated as follows in *People* v. *Gilbert,* 25 Cal.2d 422 at page 443 [154 P.2d 657.] : "The most critical point is substantial deprivation of the exercise of the free will and judgment of the party through an act participated in by the state. Mere advice and persuasion or the expression of matters of opinion

by his own attorney will not suffice to vitiate the plea. Neither will unwarranted or even wilfully false statements of factual matters by his attorney suffice. The private attorney is selected by the party and is his agent. But if the representation of the private attorney presents a purported commitment by a responsible state officer which if actually made would vitiate the plea and if the acts or statements of such state officer, although innocently done or made, apparently corroborate the representation, are in good faith and without negligence relied upon by the defendant, and in truth operate to prevent the exercise of his free will and judgment, then the state in its solicitude for fairness will not accept the benefit of a plea so given.'' Here there is no claim that any state officer directly or indirectly participated in the alleged misrepresentations. Moreover, the attorneys deny having ˌmade the claimed misrepresentations, and this conflict has been resolved against appellant by the trial court.

Another point should be mentioned. ·Appellant offers no reasonable explanation as to why he delayed nearly eight years in making this application. An application for a writ of error *coram nobis* should be made within a reasonable time. Diligence is required. A convicted person is not permitted to allow years to pass during which witnesses die, disappear or forget, and his own imagination grows and expands. The statement in the case of *In re Egan,* 24 Cal.2d 323, 339 [149 P.2d 693], that ''Lapse of time in itself would not of course foreclose relief under a proper showing,'' was made in a *habeas corpus,* not a *coram nobis,* case. In *People* v. *Black,* 114 Cal.App. 468, 473 [300 P. 43], it is held that the writ of *coram nobis* should be applied for at or near the time of moving for a new trial. In *People* v. *Vernon,* 9 Cal.App.2d 138, 142 [49 P.2d 326], a period of four and one-half years had elapsed after the judgment, and the court remarked that ''As a matter of legal principle, the rule has been frequently announced that, in order that it may be effective and within the possibility of favorable action thereon, a motion to vacate a judgment must be made 'within a reasonable time' after such judgment has been rendered,'' and concluded that the delay in that case was too long. In *People* v. *Lumbley,* 8 Cal. 2d 752, 761 [68 P.2d 354], the court said: ''The untimely delay [six years and eight months] on the part of defendant in petitioning for the writ would have been sufficient grounds for denying it.'' (See note 21 Cal.L.Rev. 228.) In the instant

case the unexplained eight-year delay would appear to be fatal to the request to grant the sought for relief.

The writ of error *coram nobis* is not a catch-all by which those convicted may litigate and relitigate the propriety of their convictions *ad infinitum.* In the vast majority of cases a trial followed by a motion for a new trial and an appeal affords adequate protection to those accused of crime. The writ of error *coram nobis* serves a limited and useful purpose. It will be used to correct errors of fact which could not be corrected in any other manner. But it is well-settled law in this and in other states that where other and adequate remedies exist the writ is not available.

The order appealed from is affirmed.

Ward, J., and Bray, J., concurred.

A petition for a rehearing was denied December 8, 1948, and appellant's petition for a hearing by the Supreme Court was denied December 20, 1948.