[Crim. No. 87.  In Bank.—August 12, 1896.]

THE PEOPLE, RESPONDENT, *v.* MARSHALL J. MILLER, APPELLANT.

CRIMINAL LAW—HOMICIDE— MURDER IN PERPETRATION OF LARCENY AND BURGLARY—WITHDRAWAL OF PLEA— PLEA OF GUILTY— DEATH PENALTY — MOTION FOR SECOND WITHDRAWAL— DISCRETION. —Where a defendant, accused of homicide, after having confessed that the murder was willfully committed while in the perpetration of larceny and burglary, asked leave to withdraw his plea of not guilty, and to substitute a plea of guilty—which was granted—and, upon hearing of the evidence to determine the degree of the crime, a sentence of death penalty was imposed by the court, it is not an abuse of discretion to refuse to permit the defendant to withdraw his plea of guilty and substitute another plea of not guilty, the case being such as not to call for a lesser punishment than that imposed by the court.

ID.—SPECULATION UPON CLEMENCY OF JUDGE.—The defendant cannot be permitted to speculate upon the clemency of a judge by substituting a plea of guilty for a plea of not guilty, with a right to retract if, before sentence, he finds that his expectation will not be realized.

ID. —DETERMINING DEGREE OF CRIME—EVIDENCE—INTOXICATION—CHARACTER of DEFENDANT — CONTINUANCE.—Where the defendant pleads guilty of the murder, and the nature of the case shows that it was deliberate and premeditated, evidence that defendant was intoxicated is valueless, as also evidence of defendant's previous good character, and it is not improper to refuse to continue the cause for the giving of such evidence for the defendant.

APPEAL from an order of the Superior Court of Yuba County refusing to allow defendant to withdraw his plea

of guilty and enter his plea of not guilty, and from the judgment of conviction.   E. A. DAVIS, Judge.

The facts are stated in the opinion of the court.

*C. A. Webb,* and *Richard Belcher,* for Appellant.

The affidavit of defendant was sufficient to entitle him to withdraw his plea of guilty and to enter his plea of not guilty.   ( *United States* v. *Dixon,* 1 Cranch C. C. 414; 1 Bishop's Criminal Procedure, 2d ed., sec. 798; Pen. Code, sec. 1018; *Sanders* v. *State,* 85 Ind. 318; *State* v. *Stephens,* 71 Mo. 535; *Gardner* v. *People,* 106 Ill. 76; *Myers* v. *State,* 18 N. E. Rep. 42.)   The refusal of the court to allow him to do so, under the circumstances, was an abuse of discretion.   (*People* v. *McCrory,* 41 Cal. 458.)

*W. F. Fitzgerald, Attorney General, Henry E. Carter, Deputy Attorney General,* and *Charles H. Jackson, Deputy Attorney General,* for Respondent.

As the plea of defendant was put in by himself only, after taking counsel of his attorneys, and all proceedings were duly taken in open court, the matter then resolved itself into one of discretion of the court, and there was no abuse of it.   (4 Am. & Eng. Ency. of Law, 776, note 2; *People* v. *Lee,* 17 Cal. 76, 80; *People* v. *McCrory,* 41 Cal. 458; *Riez* v. *Brown,* 17 L. J. 145; *State* v. *Salge,* 2 Nev. 321–24; *People* v. *Scott,* 59 Cal. 341; *Gardner* v. *People,* 106 Ill. 76; 4 Crim. Law Mag. 881; 1 Bishop's Criminal Procedure, sec. 465; *People* v. *Lennox,* 67 Cal. 113.)

HENSHAW, J.—Upon the eighth day of May, 1895, this defendant was charged by information with the crime of murder.   Upon the eleventh day of the same month he was brought before the superior court for arraignment.   At his request the court appointed two attorneys to represent him, and granted him until May 13th to consider his plea.   Upon the last-named date the defendant came before the court with his counsel, and

pleaded not guilty to the charge.    The plea was accepted
and entered, and the cause set for trial upon the seven-
teenth day of June following.    Upon that day, the court
being actually engaged in the trial of another cause, the
case of defendant was continued until June 19th.

Upon June 19th, defendant appeared in court with his
two counsel, and the case was called for trial.    There-
upon Mr. Belcher, counsel of and speaking for defend-
ant, stated to the court in open court that defendant
desired to withdraw his plea of not guilty theretofore
entered, and to plead guilty to the charge in the infor-
mation set out.    The court then asked the defendant if
that was his desire, and he answered, "Yes."    The court
then asked him if he understood that upon a plea of
"guilty" the court would be obliged to hear testimony
and receive evidence for the purpose of determining the
degree of the crime of which he stood charged, and to
which he asked leave to plead guilty, and he said he
did, and that he had been fully advised by his said
attorneys as to all of said matters.    Thereupon the
court made its order that the defendant be permitted
to withdraw his said plea of "not guilty," and the same
was by him, said defendant, then withdrawn.

The court asked the defendant whether he was guilty
of the charge of murder contained in said information.
Whereupon the defendant personally pleaded that he
was guilty thereof.

The court thereupon stated that it would then proceed
to hear testimony and receive evidence in the case for
the purpose of determining the degree of said crime,
and, no objection being made, the court then proceeded
to hear and receive the same.

At the conclusion of the taking of the evidence offered
by the people, the court asked defendant if he had any
testimony or evidence to offer, and he answered by his
counsel that he had none.

The hearing of evidence took until 11:30 A. M., at
which hour the court continued further proceedings
until 4 o'clock P. M. of the same day.    At this last hour,

all the parties with their attorneys and counsel being present, the court announced that from the evidence it was satisfied that the murder of Julius Pier was committed by defendant in the perpetration of robbery and burglary, and " that there are no facts or circumstances in the case which ought to mitigate the extreme penalty of the law." The defendant was thereupon adjudged guilty of murder in the first degree, and ordered to appear for sentence upon the twenty-ninth day of June.

Upon the twenty-ninth day of June defendant, with his counsel, came into court and moved for a postponement of the time of pronouncing judgment upon defendant, to the end that defendant might be enabled to introduce evidence in mitigation of punishment. Thereupon further proceedings were postponed until July 3d.

Upon this last-named day the defense asked a further postponement to procure evidence of the previous good character of the defendant, and of the fact that at the time of the murder 'he was intoxicated, so that "he was unable, at the time, to thoroughly appreciate his position, or to thoroughly distinguish right from wrong, or to form an intent to commit the crime."

The court denied this motion, properly holding that under the circumstances the evidence was valueless—as to intoxication, because the defendant's confession admitted in evidence, with the other testimony which was taken, showed that the crime was deliberate and premeditated, and was perpetrated in accomplishment of a pre-existing plot; that the defendant knew at the time and afterward confessed in detail the part he took in it; and finally, because, if incapable of forming a criminal design, defendant was innocent of any crime, which consideration was removed by his plea of guilty. As to the evidence of previous good character, the ruling was based upon the sound principle that evidence of this character may be introduced where a defendant's guilt is in doubt, but not where it is admitted.

After this ruling and the consequent failure to secure

further postponement, and when the court was upon the point of pronouncing judgment of sentence upon defendant, his counsel moved that defendant be allowed to withdraw his plea of guilty and plead not guilty, and with the motion offered, read, and filed defendant's affidavit, made upon July 3d, the day of the hearing, which set forth that defendant while in jail feared mob violence and summary death at the hands of lynchers, and that when he pleaded guilty he did so "without due deliberation and without fully realizing his position, and in the hope that by so doing the punishment to which he would be exposed, were he tried before a jury, would thereby be mitigated."

. No other showing than that of the affidavit was made. The court denied the motion, from which order defendant appeals.

In immediate connection with the quotation from defendant's affidavit it is proper to set forth exactly what the record shows:

" *The Court.* Are you ready in the case of *People* v. *Miller ?*

" *Mr. McDaniel.* The prosecution is ready.

" *Mr. Belcher.* In this case the defendant, Miller, wishes, with the permission of the court, to withdraw his former plea of not guilty and to plead again to the information by changing that plea.

" *The Court.* That means but one thing. He wishes to withdraw the plea of not guilty and ——

" *Mr. Belcher.* To plead guilty. That is the only interpretation to be put on it.

" *The Court.* Have you fully informed the defendant with regard to this matter ?

" *Mr. Belcher.* I have. I have talked with him several times upon the proposition. I have submitted to him all that could be, in my judgment, urged for and against, and have asked him what to do, and he has told me that he wishes to plead guilty. I think he understands it fully.

" *The Court.* (To defendant, Miller.) Have you discussed this matter fully with your attorney? A. Yes.

" Q. And do you understand the situation thoroughly? A. Yes.

" Q. Do you understand that, if you withdraw your plea of not guilty, and plead guilty, the court will have to take testimony, and determine the degree? Do you understand that? A. Yes.

" Q. And, under those circumstances, do you wish to withdraw your plea of not guilty? A. Yes."

The clerk was thereupon directed by the court to enter the withdrawal of the plea of 'not guilty formerly made by the defendant, Marshall J. Miller.

" *The Court.* (To defendant, Miller.) Now stand up. Do you understand what the information against you is? That it charges you with the crime of murder? A. Yes.

" Q. What is your plea, guilty or not guilty? A. Guilty."

Upon May 2d, more than two weeks before he pleaded guilty, defendant had made a voluntary confession, which was introduced in evidence. In that confession he minutely related the circumstances of the murder, which was brutal and atrocious to the last degree.

Defendant and his confederate had been plotting for several weeks to rob Julius Pier, a neighboring storekeeper. In the night-time they went to his store, in the rear of which he slept. They carried with them pistols and a bludgeon, and ropes and straps with which to bind their victim. They were unmasked. Masks were unnecessary, for they appear to have fully contemplated his murder if he should discover them. He was absent. They forced an entrance, and were rifling the place when he returned. They struck him blow after blow with the bludgeon. They held him down, tied him hand and foot, and gagged him. The gag was so placed that it would, and did, produce suffocation. The murderers were smeared with his blood. With the staring,

tortured, dying man upon the floor before them, they carried off their plunder, and left him to his death.

Appellant's contention is that the court abused its discretion in not allowing him to withdraw his plea, interpose a plea of not guilty for the second time, and go before a jury for trial. Before judgment, the court may, at any time, permit this to be done (Pen. Code, sec. 1018), and the discretion thus vested is one to be liberally exercised. The law seeks no unfair advantage over a defendant, but is watchful to see that the proceedings under which his life or liberty is at stake shall be fairly and impartially conducted. It holds in contemplation his natural distress, and is considerate in viewing the motives which may influence him to take one or another course. Therefore, it will permit a plea of guilty to be withdrawn if it fairly appears that defendant was in ignorance of his rights and of the consequences of his act, or was unduly and improperly influenced either by hope or fear in the making of it. But the mere fact that a defendant, knowing his rights and the consequences of his act, hoped or believed, or was led by his counsel to hope or believe, that he would receive a shorter sentence or a milder punishment by pleading guilty than that which would fall to his lot after trial and conviction by jury, presents no ground for the exercise of this liberal discretion. (*People* v. *Lennox*, 67 Cal. 113.) To hold that it did would be equivalent to saying that a defendant might speculate upon the supposed clemency of a judge, with the right to retract if, at any time before sentence, he began to think that his expectation would not be realized.

And this we are constrained to believe is exactly what this defendant attempted to do. He had made free and voluntary confession of his atrocious crime in all its details. Upon June 19th, more than six weeks after making his confession, when he has had the aid of counsel for nearly a month, under their advice, and under their statement and his own that, after repeated

consultations, he is fully advised of his rights and of the consequences of his act, he withdraws his plea of not guilty. After his confession had been made known for more than six weeks, all of which time he had passed in the security of his jail, his fear of mob violence could not have been very keen, and, as the court of its own knowledge says, was not justified by the facts.

Upon June 19th, the court makes plain intimation to the defendant that it will be compelled to impose the death penalty upon him, and continues the case ten days longer for that purpose. At the next hearing on June 29th no suggestion is made by defendant that he desires to withdraw his plea, or that he has been improperly induced by fear or hope to the making of it. He simply asks time to procure evidence in mitigation of punishment. This time is granted him, though at the former hearing he declared that he had no evidence to offer. Again he comes before the court upon July 3d, and again a motion is made for postponement, still with no suggestion that defendant desires to withdraw his plea. Only after it is made manifest that defendant is to suffer the extreme penalty, and that no further delay will be permitted, do counsel produce the affidavit, itself made upon the day of the hearing, but not offered until that moment, and ask to be allowed to retrace all the steps thus advisedly taken. What conclusion can be reached except the one that because the court was about to pronounce sentence of death, defendant and his counsel, knowing that he could not fare worse at the hands of a jury, and might fare better, sought an opportunity to essay the other chance.

If we could perceive anything in the evidence which would have called for a lesser punishment than that which the trial court was about to impose, some reason might appear why defendant should have been permitted to withdraw his plea and put his fate before a jury. No showing of this kind is made.

The record not only fails to show an abuse of dis-

cretion, but, to the contrary, from first to last makes manifest that the trial judge, placed in an unusual and trying position, conducted all of the proceedings with a just and even solicitous regard for the defendant's rights, and ruled as alone it was permissible for him to rule under the facts before him.

The order appealed from is affirmed.

TEMPLE, J., McFARLAND, J., BEATTY, C. J., GAROUTTE, J., VAN FLEET, J., and HARRISON, J., concurred.