[Crim. No. 4500. In Bank. July 18, 1944.]

In re WILLIAM LEVA HOUGH, on Habeas Corpus.

Morris Lavine for Petitioner.

Robert W. Kenny, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

CURTIS, J.—The petitioner seeks his release from the custody of the warden of the State Prison at San Quentin after his pleas of guilty to two counts of murder upon which the death sentence was pronounced against him.

The ground upon which his petition for release is based is that the judgments of conviction are illegal and are violative of the Fourteenth Amendment of the Constitution of the United States, and deprive petitioner of his life without due process of law. His main complaint is that his pleas of guilty were secured and induced by improper and illegal means, which render his conviction void and of no legal effect. As will more fully hereinafter appear, petitioner was represented during the pendency of his action in the trial court and on the appeal of said action to this court by a representative of the public defender of the county. While his said appeal was pending, he changed attorneys and his newly acquired attorney represents him in the present proceeding.

Petitioner was indicted for the murder of his wife and her male companion on June 13, 1942, at Long Beach in the county of Los Angeles. The original indictment was in two counts. By count one he was charged with the murder of his wife, Inez Hough, and by count two, with the murder of Frederick L. Culp. To each of these two counts he pleaded

not guilty and not guilty by reason of insanity. At a later date an amended indictment was filed against him in which he was charged with the same two offenses of murder and with a prior conviction of a felony. Upon filing the amended indictment petitioner withdrew his two former pleas of not guilty, and pleaded guilty to the two charges of murder and admitted the prior conviction of a felony.

He now contends, in the first place, that his counsel was misled by the trial judge and the prosecuting officers of the county by assurances that if petitioner would withdraw his pleas of not guilty and plead guilty to the amended indictment, the sentence of death would not be imposed. The case against petitioner was before us on appeal, and the factual situation therein involved is set forth in some detail in our opinion therein this day filed. (*People* v. *Hough, post,* p. 535 [150 P.2d 444].)

The record before us in the present proceeding fails to show that either the trial judge or anyone connected with the district attorney's office or with the prosecution of the case against petitioner made any promise or commitment, directly or indirectly, to petitioner or to his counsel in consideration of his withdrawal of his pleas of not guilty and of his entry of pleas of guilty. Deputy District Attorney Sten was assigned by the district attorney's office to represent the prosecution, and Deputy District Attorney Hunt was assigned to assist Mr. Sten in the prosecution of the case. In the numerous conferences had between them and petitioner's counsel, Deputy District Attorney Sten informed the latter that the district attorney's office would not consent to life imprisonment, or any lesser punishment than the death penalty. The trial judge who took part in some of those conferences ''hoping to get a satisfactory disposition of this case, stated that if the District Attorney would be satisfied with life imprisonment, it would be satisfactory to the Court.'' The trial judge, however, at no time promised or intimated to petitioner or his counsel that he would impose the penalty of life imprisonment in opposition to the recommendation of the district attorney's office.

The case after some continuances was set down for trial for August 11th. The day before, the trial judge called into his chambers the petitioner's attorney and the two deputy dis-

trict attorneys, informed them that the case could not be tried on the 11th, due to an unfinished case then before the court, and suggested to counsel that the case be continued to the next day, August 12th. This was agreed to, and at the same meeting Mr. Sten informed the court that he intended to file an amended indictment charging petitioner with a prior felony conviction in addition to the two charges of murder. On the morning of August 11th, the case was called with counsel for all parties present. The amended indictment was filed,. charging the two crimes of murder and the previous conviction of a felony. The petitioner was arraigned on these charges and the case continued to the following day, August 12th. On the evening of August 11th, petitioner's counsel informed the trial judge that the petitioner would withdraw his pleas of not guilty by reason of insanity and not guilty to each count of the amended indictment, and plead guilty and admit his prior conviction.

Before the opening of court the next morning, August 12th, the trial judge called petitioner's counsel and Mr. Sten and Mr. Hunt into his chambers and made the following statement to petitioner's counsel: ''Before you proceed in this matter I don't want you to be misled by any of the conversations you have had with me, or by any conversation that you have had with anyone else, or by anything that you might have heard from anyone, because if I try this case I may have to pronounce the death penalty, and I want you to know this in advance so you won't plead the defendant guilty with any expectations. We have a jury panel present and you can have a jury trial.'' To this statement petitioner's counsel replied: ''All I want to know is, do you start this case with an open mind?'' In answer to this question Judge Still (the trial judge) states in his affidavit: ''I told him that I did, and he [petitioner's counsel] said: 'I am going to proceed as I have advised you.' '' Immediately following this meeting, court convened with petitioner and his counsel present. Petitioner withdrew his former pleas of not guilty and not guilty by reason of insanity and pleaded guilty to the two counts of murder contained in the amended indictment and admitted his prior felony conviction. Thereupon the court proceeded to take evidence to determine the degree of the crime and to fix the punishment. This hearing consumed the greater part

of three days. At its close petitioner waived time for sentence. Thereupon, the court sentenced him to suffer the death penalty.

It will thus be seen that there is absolutely no showing that either the trial judge or the district attorney offered any promise or inducement to petitioner's attorney or to petitioner to withdraw his pleas of not guilty and enter pleas of guilty. There is no attempt to show that any person whatever connected with the prosecution of petitioner made any promise to either petitioner or his counsel or misled either of them as to the entry of petitioner's pleas of guilty. Petitioner leans heavily upon certain statements made to his attorney by Deputy District Attorney Hunt. He refers to him as the "veteran prosecutor," and a lawyer with much more experience in the prosecution of cases than Mr. Sten. But the record shows without conflict that Mr. Sten was in charge of the prosecution of the case against petitioner and that Mr. Hunt was assigned to assist Mr. Sten, but was without any authority whatever to bind the district attorney's office in any matter in reference to the case. The record further shows without dispute that Mr. Hunt at no time made any promise or inducement to petitioner or his counsel respecting petitioner's pleas in said action. Mr. Hunt did state to petitioner's counsel at various times before petitioner entered his pleas of guilty, that in his opinion a sentence of life imprisonment would satisfy the ends of justice, but, as just stated, he at no time promised directly, indirectly, or impliedly, that he would ask or recommend to the court a sentence of life imprisonment in case pleas of guilty were entered. Petitioner's counsel well knew of Mr. Hunt's position in the case and that he had no authority to bind the district attorney's office respecting any matter involved in the case and Mr. Hunt, realizing his subordinate position, never purported to do so. In the conferences before the trial judge he expressed his views respecting the punishment to be administered in the case, and that was all. According to the trial judge "Mr. Hunt took only a negligible part in the conversation." The attempt to show that petitioner or his attorney was misled by any statement or act on the part of Mr. Hunt finds no support whatever in the record before us.

Petitioner's second contention rests upon the follow-

ing state of facts: At the time of petitioner's arraignment upon the original indictment he was without any attorney and without funds to employ an attorney to defend him. For this reason the court appointed the public defender of the county to represent him. Mr. E. J. Hovden, a regularly appointed and acting deputy in the office of the public defender, was assigned to conduct the defense of petitioner, and he acted as petitioner's attorney during the entire proceedings in said action up to and including the time that judgment was pronounced against him. It is petitioner's contention that the public defender is an officer of the county, and represents the state in the prosecution of criminal actions, in the same light and to the same extent as the district attorney, or other officer of the state or county connected with the prosecution of criminal cases. With this contention we cannot agree. Petitioner cites no authority in support of his contention and none has come to our attention.

The office of public defender was created by an act of the Legislature enacted in 1921. (See Stats. 1921, p. 354, ch. 245, Deering's Gen. Laws, 1937, Act 1910.) By section 5 of this act the duties of such an officer are defined in the following terms, so far as pertinent to this proceeding: "Upon request of the defendant or upon order of the court, the public defender shall defend, without expense to them, all persons who are not financially able to employ counsel and who are charged with the commission of any contempt, misdemeanor, felony or other offense. He shall also, upon request, give counsel and advice to such persons, in and about any charge against them upon which he is conducting the defense, and he shall prosecute all appeals to a higher court or courts, of any person who has been convicted upon any such charge, where, in his opinion, such appeal will, or might reasonably be expected to, result in the reversal or modification of the judgment of conviction." While the act has been amended on two occasions (Stats. 1927, p. 1886; Stats. 1931, p. 2566) the quoted portion of section 5 has not been changed in any respect. Section 6 of the act, both in its original and amended form, provides for the appointment by the board of supervisors of a sufficient number of deputies to conduct the office of public defender properly and fixes their salaries.

Under this statute when the public defender is ap-

pointed to represent a defendant accused of a crime, he becomes the attorney for said defendant for all purposes of the case and to the same extent as if regularly retained and employed by the defendant. The judge of the trial court has no more authority or control of him than he has of any other attorney practicing before his court. The public defender is free from any restraint or domination by the district attorney or of the prosecuting authorities. He is as free to act in behalf of his client as if he had been regularly employed and retained by the defendant whom he represents. Were it not so his client would not be afforded the full right ''to have assistance of counsel for his defense'' which the Constitutions, both state and federal, give to one accused of crime. With such plenary powers given a public defender when appointed to defend one accused of crime, it necessarily follows that no act of his in advising his client or in defending the latter upon the charge against him can be considered in any different light than if such act were performed by an attorney regularly employed and retained by the defendant. In no sense can it be held that the prosecuting officers of the county are in any respect charged with the consequences of such an act. The contention therefore that the petitioner is not bound by his pleas of guilty, on the ground that in so pleading he was misled by the advice of the public defender acting as his attorney, is not well taken.

The further contention is made by petitioner that his former attorney assured him that should he plead guilty to the charges against him, he would not suffer the death penalty. In fact petitioner under oath states that Mr. Hovden stated to him ''I guarantee you that if you plead guilty you won't get gassed.'' Mr. Hovden filed a lengthy affidavit in support of petitioner's original application in this matter and in other ways has shown his willingness to assist petitioner in his present efforts to escape from the judgment rendered against him by the trial court. He has shown himself to be a most willing witness in petitioner's behalf. However he expressly denies giving to petitioner any such assurance as petitioner claims, and he further denies making the statement quoted above or ''any other statement which in substance or effect guaranteed or assured any particular punishment to be imposed.'' The record shows that Mr. Hovden had had over

twelve years' experience as deputy public defender before his association as attorney for the petitioner. The evidence against petitioner, as briefly detailed in the opinion of this court on the appeal from this judgment following petitioner's pleas of guilty, is so conclusive and overwhelming against petitioner that it is most unreasonable to believe that an attorney of Mr. Hovden's experience and ability would give any such guarantee or assurance as claimed by petitioner. Giving consideration to those facts and the further fact that Mr. Hovden emphatically denies making any such assertion as that attributed to him by petitioner, we are unable to give credence to petitioner's claim that he was misled in entering his pleas of guilty by any assurance or guarantee on the part of Mr. Hovden.

In seeking to avoid the judgment in this case the petitioner claims further that his former attorney failed to advise him fully as to the attitude of the trial judge and district attorney's office respecting the punishment which might be imposed upon him in case he should plead guilty to the two charges against him. In support of this contention the only claim made by petitioner is that his former attorney failed to inform him of the conversation between the trial judge, the two deputy district attorneys and Mr. Hovden held on the morning of August 12th just prior to the session of the court at which petitioner withdrew his former pleas and pleaded guilty to the two charges of murder set forth in the amended indictment. Petitioner's former attorney admits that he did not inform petitioner of this conversation nor of the statement of the trial judge on that occasion for the reason that the remarks of the judge "were interpreted by affiant [his former attorney] not as indicating any change of mind of the trial court but as being a protective comment to absolve the court of any direct promise or commitment respecting punishment."

Did the failure of his attorney to inform petitioner of this statement of the trial judge furnish any legal ground upon which this court can base an order setting aside petitioner's pleas of guilty? Examining this matter in the light of all the surrounding circumstances and the law applicable thereto, we are of the opinion that the question just asked must be answered in the negative. The surrounding circumstances show that petitioner's former attorney was a lawyer of more

than ordinary experience in the defense of persons accused of crime. Petitioner's present attorney referred to Mr. Hovden in his argument as a "high class attorney," "a courageous public defender" and that he "had no criticism of Mr. Hovden." The record shows that petitioner had absolute confidence in the ability and loyalty of Mr. Hovden. There can be no doubt that Mr. Hovden exercised his best judgment in advising petitioner in respect to the pleas the latter was called upon to make to the charges in the amended indictment. Had he informed petitioner of the statement of the trial judge just prior to their entry into the court room on the day set for the trial of petitioner's case, petitioner would naturally have asked Mr. Hovden's advice respecting his pleas in view of the recent statement of the trial judge, and Mr. Hovden would have advised him that he did not interpret these latest remarks of the trial judge "as indicating any change of mind of the trial court." The record shows without conflict that the petitioner at all times had implicit confidence in Mr. Hovden and followed his advice on every occasion, and it is reasonable to suppose that he would have done so on this morning of August 12th had Mr. Hovden informed him of the statement of the trial judge just before opening of court on that morning. Under these circumstances we think it quite evident that petitioner's situation would not have been any different from what it was at the time he entered his pleas of guilty had Mr. Hovden informed him of the latest statement by the court.

Turning now to the legal phase of petitioner's contention that his pleas of guilty should be set aside by reason of his former attorney's failure to inform him of the trial court's statement just prior to his entry of said pleas, we find it fairly "well settled in this state that this procedure to set aside a judgment after plea of guilty may only be resorted to where, on account of duress, fraud, or other force overreaching the free will and judgment of a defendant, he is deprived of his right to a trial on the merits." (*People* v. *Gottlieb,* 25 Cal.App.2d 411, 415 [77 P.2d 489], *People* v. *Aseltine,* 139 Cal.App. 768, 780 [34 P.2d 830]. In the Gottlieb case it is stated (p. 415): "Neither does it avail appellant anything that he entered his plea solely on the advice of his counsel,

representing him in the case, because this falls far short of being a fraudulently obtained plea."

The early case of *People* v. *Miller*, 114 Cal. 10 [45 P. 986], is in many respects like the situation now before us. The defendant was accused of the crime of murder. The court appointed two attorneys to represent him. He entered a plea of not guilty and his case was set down for trial. On the day fixed for the trial of his case he appeared in court with his attorney and asked to withdraw his pleas of not guilty and to plead guilty. His request was granted and he entered a plea of guilty. The time was set for hearing testimony to fix the degree of the crime. After some continuances, evidence for this purpose and in mitigation of punishment was received on a number of different days. A further continuance was asked by defendant and denied by the court. Whereupon the defendant through his counsel asked to be allowed to withdraw his plea of guilty and to plead not guilty on the ground, as shown by affidavits filed by him at the hearing of said motion, that he (p. 14) "while in jail feared mob violence and summary death at the hands of lynchers, and that when he pleaded guilty he did so 'without due deliberation and without fully realizing his position, and in the hope that by so doing the punishment to which he would be exposed, were he tried before a jury, would thereby be mitigated.' " The court denied his motion and on appeal in affirming the judgment this court stated (p. 16): "Appellant's contention is that the court abused its discretion in not allowing him to withdraw his plea, interpose a plea of not guilty for the second time, and go before a jury for trial. Before judgment, the court may, at any time, permit this to be done (Pen. Code, sec. 1018), and the discretion thus vested is one to be liberally exercised. . . . But the mere fact that a defendant, knowing his rights and the consequences of his act, hoped or believed, or was led by his counsel to hope or believe, that he would receive a shorter sentence or a milder punishment by pleading guilty than that which would fall to his lot after trial and conviction by jury, presents no ground for the exercise of this liberal discretion." That case was referred to by this court in the case of *People* v. *Schwarz*, 201 Cal. 309 [257 P. 71], and the following comment thereon was made on page 315 of the opinion: "The case of *People* v. *Miller*, 114 Cal. 10, 16 [45 P. 986], it is said, supports the action of the

trial court, but it is not in the same category with the case before us as to the facts thereof. There the defendant was led by the advice of his counsel to believe that he would get less punishment if he changed his plea to guilty than he would receive if he stood trial and was convicted. In this hope, however, he was disappointed. The court rightly held that with full knowledge of the consequences which might follow he should not be permitted to speculate upon the action of the court."

Under these authorities we are of the opinion that the petitioner under the facts here was bound by his pleas of guilty entered in the case then pending against him and may not have his pleas set aside or vacated by reason of any act of his attorney in advising him respecting his defense in said action, or withholding from him the information which his attorney honestly believed would be of no material assistance to his client before entering said pleas.

Petitioner also advances the contention that he was weak in body and in such a highly nervous and irrational state of mind as to render himself mentally incompetent to make a proper defense to the action against him, and that a plea of guilty by a defendant in such a mental state is no plea at all and should be set aside when the true facts are shown to the court. It is unnecessary to go into the details of petitioner's condition subsequent to his arrest and during the progress of the action against him up to and during the hearing by the court after his pleas of guilty. After petitioner had pleaded not guilty by reason of insanity at his arraignment on the original indictment, the trial court appointed three alienists to examine petitioner as to his mental condition. Two of these alienists reported that petitioner was sane both at the time he killed his wife and at the time of their examination of him. One of the three was unable to state whether or not petitioner was sane. He did report that in his opinion the defendant "will be legally insane at the time of the hearing set for July 28, 1942" (the date then set for defendant's trial). As noted above, the date of trial was advanced to August 12, 1942. Whether the court should have proceeded with the case against defendant in his then mental state was within the sound discretion of the trial judge. Under the circumstances shown and particularly in view of the report

of the two appointed alienists that petitioner was then sane, we are of the opinion that there was no abuse of discretion on the part of the trial judge in proceeding with petitioner's case in the manner shown by the record.

The final contention of petitioner needs even less discussion than that just considered. Petitioner in this contention claims that the court proceeded to impose upon him the death penalty without taking any evidence to fix the punishment or to determine whether there were any mitigating circumstances sufficient to justify the judgment of life imprisonment rather than death. This contention is answered by what we have previously said in this opinion, that is, that after petitioner's plea of guilty the court then proceeded to take evidence as to the degree of the crime and to fix the punishment, and that the greater part of three days was spent by the court in the hearing of said matter.

Petitioner bases his hope of sustaining this contention upon the statement of the court after petitioner had entered his pleas of guilty. This statement was made immediately after petitioner had entered said pleas and was in the following words: "Now the matter of fixing the degree remains. How do you want to take care of that?" It was in answer to this question and by agreement of all parties in the case that the court spent the greater part of three days in hearing the witnesses, both of the prosecution and the defense, and at its close both parties rested, the petitioner waived time for sentence and the court pronounced its judgment. There is no showing that this hearing was limited to the question of the degree of the crime and did not include evidence for the purpose of fixing the punishment. In fact it would be difficult if not impossible to separate these two purposes for which the evidence was admitted. In endeavoring to show that the crime was not of the first degree, a defendant would introduce every item of evidence which would have the least tendency to prove that he was only guilty of some lesser offense. This would include not only evidence that he was not guilty of the higher offense, but also such evidence if any he had, which would mitigate his offense and thus influence the court in fixing his crime at less than the supreme penalty.

We find nothing in the record before us which would justify the relief sought by the petitioner. The writ is accord-

ingly discharged and the petitioner is remanded to the custody of the warden of the State Prison of the State of California at San Quentin, California.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.