[Crim. No. 5658. Second Dist., Div. One. Feb. 28, 1957.]

In re LACONIA BURROUGHS, on Habeas Corpus.

Laconia Burroughs, in pro. per., and Frederic A. Spindell and Harold J. Ackerman, under appointment by the District Court of Appeal, for Petitioner.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

FOURT, J.—Laconia Burroughs, the petitioner herein, seeks a writ of habeas corpus. He contends that he is now unlawfully detained in one of the prisons of the state, and that such imprisonment is illegal in that (1) he was denied due process of law, which deprived him of a fair trial; (2) that he was not properly represented by counsel of his own choice throughout the trial; (3) that he was denied a speedy trial as guaranteed by the Constitution; (4) that he was taken before the grand jury to testify against his will, and without benefit of counsel; (5) that he was induced to plead guilty and was sentenced for a crime that never occurred, and (6) that there was no probable or reasonable cause for his conviction.

A review of the facts as disclosed by the record before us reveals that an indictment in two counts was returned by the grand jury in the city and county of San Francisco, on March 17, 1955, wherein petitioner and his codefendants were charged in count I of said indictment with conspiracy to commit grand theft in violation of section 182 of the Penal Code, and in count II with an attempt to commit grand theft. It was further alleged that the petitioner had suffered three prior convictions and had served a term in a federal penitentiary for each of such convictions; that Echols, a codefendant, had been previously convicted of violating section 11500 of the Health and Safety Code, and had served a term in prison therefor, and had been convicted of "grand theft and confidence game," a felony, in Arizona, and had served a term in prison therefor; that Parvin, a codefendant, had been previously convicted of violating the provisions of sections 480 and 192 of the Penal Code, and had served a term in prison therefor.

On March 21, 1955, the petitioner and Echols were in custody and each was in court. They both stated that Pierre Ibos, an attorney practicing in San Francisco, but who was not then present in court, represented them. Mr. Dresow, the Assistant Public Defender, was also in court on their first appearance, and he suggested that the matter go over until March 23, 1955, obviously for the purpose and to the end that Ibos could then be present.

On March 23, 1955, the petitioner and Echols and Ibos were in court. Ibos stated that he had just received the transcript the day before and requested a continuance to March 28, 1955. The petitioner and Echols were then arraigned and pursuant to Ibos' request, the matter was con-

tinued to March 28, 1955, for their plea. Bail was set at $6,000 if a personal bond were given, and $3,000, if cash or a surety bond were given.

On March 28, 1955, Dresow was in court and at such time stated that Ibos had called and asked that the matters of the two defendants go over to the 30th of March, 1955, for their plea. On March 30, 1955, the petitioner and Echols and Ibos, their attorney, were present in court and Ibos stated that he intended to make a motion to quash the indictment. He further stated that Echols' wife had died the day before and he wanted the matter to go over until April 4, 1955, and the motion for the continuance was granted.

On April 4, 1955, petitioner, Echols and Ibos, their attorney, were present in court. The judge at that time denied the motion to quash the indictment and Ibos announced that the defendants represented by him were ready to plead. Each defendant plead not guilty to each count and denied the priors as alleged. The assistant district attorney suggested April 27th, 1955, as a tentative date for the trial. Ibos stated in substance that since the defendants could not make bail "We would like it earlier, if you could." The assistant district attorney indicated that one of the other defendants, who had not at that time been apprehended, might be caught in the next day or so, and that "We might as well have them altogether." Ibos stated that he understood that one of the other defendants had been apprehended. The court thereupon continued the cause to April 27, 1955.

On April 27, 1955, the petitioner and Echols were in court. Dresow, the Assistant Public Defender, stated that the other two defendants were still fugitives, but that petitioner and Echols were represented by Ibos. Ibos was apparently not present in the courtroom at the time that statement was made but the petitioner and Echols were. Neither of the defendants present made any comment or statement, however. Then Dresow said, "These gentlemen said Mr. Ibos is not representing them. The fact is he is still their attorney of record and he made a formal request of me to continue this case." The assistant district attorney suggested two weeks continuance, "[a]t which time they can straighten out this matter." The cause was then continued to May 11, 1955.

On May 11, 1955, John Golden, in behalf of Leslie Gillen, appeared as the attorney for Joan Rieras (a codefendant). Golden stated that he had just received the transcript and would like to have the case go over for a few days. Joan

Rieras was arraigned and the cause, so far as she was concerned, was continued one week, to May 18, 1955, for a plea. The defendant Parvin was not present, and his arraignment was continued to May 18, 1955. Petitioner stated to the court, "I have no attorney," and Ibos said that the petitioner was going to ask for the public defender, to which remark the petitioner agreed. The court then stated, "Well, we will keep him over to May the 18." Echols spoke up and stated at that time that Ibos was representing him, to which Ibos agreed. The matters were then continued to May 18, 1955.

On May 18, 1955, William Parvin was still a fugitive. On that date, when the matter first came on to be heard, the attorneys for Joan Rieras were not present. However, later on they did appear, and Joan Rieras was then arraigned and her attorney stated that he intended to make some motions and requested a brief continuance. The court said, "Our problem, so far as *Mr. Ibos' clients* are concerned, is that *they are* in custody and I would like to get the matter to trial as soon as possible." (Emphasis added.) Reiras' attorney indicated that he only wanted two days, whereupon Ibos spoke up and said, "Well, that is all right. Your Honor, I don't want Mr. Gillen to think I am complaining, but I want him to know that *these poor men* are in jail." (Emphasis added.) The entire matter was then continued to May 20, 1955.

On May 20, 1955, Joan Rieras' attorney moved to reduce her bail, and also that she have a separate trial. She pleaded not guilty to each count of the indictment. The judge indicated that he wanted to read the transcript before passing upon the motions. In discussing to what date the matter should be continued, the assistant district attorney stated that "the other two defendants have been in custody and we have been anxious to try them and held the trial pending the return of" Joan Rieras, who had theretofore, when placed on bail, left the jurisdiction and gone back east and remained there as a fugitive, knowing her presence was required here, and was ultimately extradited to California. The assistant district attorney then stated that he would like to try the entire matter on May 31, 1955. The court set the cause for the 31st day of May, and Ibos answered that such date was agreeable to him.

On May 31, 1955, the defendant Parvin and the other defendants were present in court. Parvin's attorney, Mr. McDonnell, was not present, and Golden, the attorney for Joan Rieras, waived the reading of the indictment for Parvin and

requested a continuance. The assistant district attorney suggested that it go over to the 3rd of June, 1955, for the plea of Parvin. The court denied the motion of Joan Rieras for a severance of the trial. Counsel for Rieras then indicated that he had in mind waiving a jury trial and to have a trial by the court, and the assistant district attorney stated that he had discussed it and that the earliest possible date they could try the case with a jury was on June 15, 1955, and that he would be prepared to go ahead at that time. Ibos thereupon announced that "I think *we are* also entitled to a severance, your Honor; it is just as appropriate." (Emphasis added.) Later on McDonnell, the attorney for Parvin, came into the courtroom and stated that *he desired to make a motion to quash the indictment,* whereupon, all matters were continued to June 3, 1955. Golden, the attorney for Joan Rieras, stated that he knew that the 15th of June would not be a satisfactory trial date for him.

On June 3, 1955, the judge stated that he wanted further time, namely, to June 6, 1955, within which to read the authorities, previously submitted by counsel, and the transcript. There were no objections and *Ibos said, "Oh, surely it is all right with me.* Your Honor, you know I am the last person in the world to complain and I can see myself now tied up about 18 days in this case because Mr. Gillen—he is smiling now; he does the same thing as I do, I know, but these *two men* are now going on their fifth month in custody and I will have to insist on an immediate trial. I don't think I am doing anything that is wrong." (Emphasis added.) The assistant district attorney announced that he was ready to try the case on the first open date.

There then followed some talk about just what date to which the cause should be continued, the judge saying, "Let's make it Monday, but keep in mind the plight of *Mr. Ibos' clients,"* and Ibos replied, *"If it will only take a few days longer that is all right."* (Emphasis added.) The judge then said, "We want to get them to trial," and continued the causes to June 6, 1955.

On June 6, 1955, when the case was called, McDonnell, attorney for Parvin, stated: "I noticed *Mr. Ibos is here with his two clients.* Mr. Gillen represents the young lady." (Emphasis added.) There was no comment from Ibos or petitioner to the contrary. The judge denied the motion of Parvin to quash the indictment and he pleaded not guilty to each of the two counts and admitted the prior convictions. McDonnell announced that so far as the Parvin matter was concerned,

they were willing to waive a jury. Thereupon the petitioner herein, who had been present at each and every time when the case was previously called for any purpose and had heard it indicated that Ibos was in fact representing him and Echols and had made no comment to the contrary, said, "I don't have an attorney." Ibos immediately said, "Well, in spite of that I was going to ask your Honor today to appoint the Public Defender. Is that all right?" The assistant public defender, who was then in court, stated that he felt he was being imposed upon, that the case had been going on for six weeks or so, and then suddenly they wanted him in the case. He then said, "They have had other counsel all along." The question then arose as to whether petitioner was truly indigent and Ibos spoke up and vouched for his indigency by saying, "He is indigent all right; there is no doubt about that." The petitioner was then sworn and testified as to whether he had any property, and among other things, also said that Ibos had been his attorney in the beginning, but that he had not been his attorney all of the time. He further stated that he had written the judge a letter and "stated to the clerk" that he wanted the court to appoint the public defender as his attorney. The judge said that he did recall receiving a letter, the contents of which were not disclosed. The following then took place:

"MR. IBOS: If your Honor please, I will tell your Honor this: I have tried to avoid this, causing your Honor and Mr. Dresow extra trouble also, but there are different counsel in this case and all the defendants will require separate counsel because there is going to be a conflict, as I see now, so it is fair to have a separate lawyer.

"THE COURT: Of course, but the point is whether Mr. Dresow can——

"MR. IBOS: Oh, he likes it, Judge.

"MR. DRESOW: What are you talking about?

"MR. GIUBBINI (Assistant District Attorney): *May the record show, your Honor, that the defendant Burroughs was represented by Mr. Ibos up to and including this morning?*

"MR. DRESOW: *Today.*

"MR. GIUBBINI: *It is and has been my understanding all the time.*

"THE COURT: *All right.* What date can we agree upon?

"MR. GIUBBINI: Therein lies the problem. The People are prepared to try this case at whatever date all four counsel agree upon." (Emphasis added.)

Then followed the assertion of Mr. McDonnell that he was very, very busy with other trials, and substantially the same statement by Gillen. The assistant public defender announced that he was ready to go to trial that very day, or the next. All counsel then agreed upon the date of July 6, 1955, and the matter was then set for trial for such date. On July 6, 1955, the defendants were in court, and *with the consent of their respective counsel*, the cause was continued to July 11, 1955, for trial.

On July 11, 1955, the record shows that all of the defendants with their respective attorneys were present in court. The parties and their counsel adjourned to the judge's chambers, and so far as pertinent here, the record disclosed that the following took place:

"(In Chambers: Present: Irving Reichert, Assistant District Attorney; Pierre Ibos, Attorney for Defendant Echols; the Defendant James Echols; Joseph Kennedy, Deputy Public Defender, Attorney for Defendant Laconia Burroughs; and the Defendant Laconia Burroughs.)

"THE COURT: Now, who is going to make a statement? Let the record show that we are in Chambers out of the presence of the jury panel, and that present are the defendants Burroughs and Echols with their counsel.

"MR. IBOS: I will address my client.

"THE COURT: You represent Mr. Echols?

"MR. IBOS: Yes. Now, Mr. Echols, we had a little discussion between his Honor and Mr. Kennedy, who represents Mr. Burroughs, and the Judge and the District Attorney have come to the conclusion and decided that the sentence which can be imposed upon an attempt to commit grand theft can be one either in the County Jail or in the State Penitentiary.

"Now, it will be up to his Honor to decide which to do, and if you plead guilty to an attempt to commit grand theft, there is no promise made to you about what kind of a sentence you shall receive.

"The Court will decide what it thinks is fair and just in the matter, but that kind of a sentence can be given—the County Jail or the Penitentiary.

"Now, I advise you to plead guilty under the facts and circumstances and the law in the case. My advice to you is to plead guilty. So you will have to do it, knowing what I have said to you and expecting that only. Is that all right? Did I make it clear, your Honor?

"THE COURT: Yes, I think it is clear. I know nothing of the facts of this case. This case was transferred from another Department. I know nothing of the pleadings. I will have to get the circumstances from the Probation Report, and I will have to be guided accordingly, and my interpretation of the attempt section is that an attempted grand theft would be punishable either in the State Prison for not more than five years, which would be one-half of the—grand theft carries one to ten, and if he should be sent to the State Prison it would be for half of that, or in other words, my interpretation is one to five.

"It has an alternative which is a year. If he were sent to the County Jail, the maximum would be six months, because it carries one-half of what the normal term carries.

"MR. IBOS: I understand it. He understands it, and I believe that is the thing he ought to do in the case.

"MR. KENNEDY: Yes, your Honor. I should like to make a statement to Mr. Burroughs. You understand, Mr. Burroughs, in this case we take substantially the same position Mr. Ibos has made to his client, *and there is no promise made to you on our behalf, or any person who is present here, concerning what the sentence in this matter will be.*

"DEFENDANT BURROUGHS: *Yes, sir.*

"MR. KENNEDY: I have told you that the choice is entirely yours to make, and if you desire to enter a plea to an attempt, you understand *what the sentences can be?*

"DEFENDANT BURROUGHS: *Yes, sir.*

"MR. KENNEDY: You are acting freely and voluntarily, not any urging on my part, is that correct?

"DEFENDANT BURROUGHS: Yes, sir.

"THE COURT: All right.

.    .    .    .    .    .    .    .    .    .    .    .

"THE COURT: Do you understand, Mr. Ibos, you are now offering on behalf of your client, Mr. James Echols to withdraw your former plea to Count II of the Indictment which has to do with the attempted theft?

"MR. IBOS: Yes, your Honor.

"THE COURT: All right. The Court will grant your motion.

"MR. IBOS: I understand the priors are also going to be dismissed.

"MR. REICHERT: That is correct; if Echols pleads to Count II of the Indictment, we will ask the Court to dismiss the allegations as to the prior.

"THE COURT: Very well, I will grant your motion then,

and Mr. Kennedy, representing Mr. Burroughs, I understand that you likewise move the Court to permit the Defendant Laconia Burroughs to withdraw his former plea of not guilty to Count II of the Indictment, having to do with the attempted grand theft.

"MR. KENNEDY: That is correct, if your Honor please.

"THE COURT: The respective motions are then granted. Very well, Mr. Clerk, will you take the plea.

"THE CLERK: Laconia Burroughs and James Echols, you are each charged in an Indictment filed by the Grand Jury with the crime of felony, to wit, conspiracy to commit grand theft, and attempted grand theft, to each of which you pleaded not guilty. By permission of the Court, you are permitted to withdraw your former plea of not guilty.

"Laconia Burroughs, what is your plea at this time?

"DEFENDANT BURROUGHS: Guilty.

"THE CLERK: And Echols?

"DEFENDANT ECHOLS: Guilty.

"THE CLERK: Time waived?

"MR. KENNEDY: Time waived.

"MR. IBOS: Waive time.

"(Whereupon, the Clerk arraigned the defendants for judgment."

"MR. KENNEDY: No legal cause.

"THE COURT: No legal cause?

"MR. IBOS: No, your Honor.

"THE COURT: Very well. I take it you want to make a motion for probation?

"MR. IBOS: If it can be waived——

"THE COURT: It can be waived but I'd rather have it in this case, because I have no information before me.

"MR. IBOS: Thank you, your Honor." (Emphasis added.)

The court then set August 16, 1955 (and continued to August 18, 1955), for the pronouncement of judgment, at which time the defendants and their respective attorneys were present. The representative of the public defender's office was present in behalf of the petitioner, and among other things, the following was said:

"MR. MCNAMARA (Assistant Public Defender): Well, I talked with Mr. Burroughs, and he tells me that his wife is in the east. He came out to Los Angeles to work some months ago and he tells me that this incident arose in a way where he was more or less the victim of circumstances. He seems to be sincere in wanting to return home and undertake his

responsibilities. Now, obviously, if he is not eligible for probation, why, I can't direct my remarks with the objective that he be given probation, but I would call your Honor's attention to the fact that the Indictment was returned on March 17th, which is an important day of course, and they have been in custody all that time; that is, Mr. Burroughs has; and I would ask that your Honor take it into consideration. As I say, he seems to be quite sincere in wanting to straighten his affairs out. I was not familiar with the prior record, however, I might say that.

"THE COURT: Very extensive records. They all have extensive records. One of these men—I don't know whether it is Burroughs or Echols—Burroughs is an old hand at this sort of stuff. Did you wish to say something?

"MR. IBOS: As far as the Defendant Echols is concerned, at the time this defendant pleaded guilty, we are aware and were aware then and we are now, that he had no reason or right to expect probation, if your Honor please, and does not expect that, but at the time he pleaded guilty, we discussed the law in the matter, and we probably thought that he might be able, by pleading guilty, after he had pleaded guilty, that your Honor might consider for him a County Jail sentence. Now, that was the idea in most of our minds at that time, and if that could be done, that is all he'd expect and he'd be very happy to get that, if he could get that, just a County Jail sentence with a maximum term, your Honor.

"THE COURT: I should think he would be, but the unfortunate situation here is that the maximum to this offense to which these defendants have pleaded, as I read the law, is six months.

"MR. McDONNELL: I realize that.

"MR. IBOS: In the County Jail.

"THE COURT: And I can't see myself, with their extensive records, giving a six months County Jail sentence. After all, this is the old pigeon drop deal of $5000 and it was by the grace of God they—they got it out of the bank but couldn't cash the check."

Thereupon the defendants then appearing were sentenced to the state prison.

The Superintendent of the California Men's Colony State Prison at San Luis Obispo made his return to the writ by setting forth a copy of the judgment and commitment and further by answering the various contentions of petitioner.

We are of the belief that, under the circumstances

as here presented, that the writ should be denied. The contention that petitioner was denied due process of law and a fair trial is not borne out by the record. Petitioner was represented by counsel of his own choice, namely Mr. Ibos, or stood by and permitted the court to believe that Ibos was representing him, and certainly Ibos led the court to believe that he represented Echols and the petitioner up to and including June 6, 1955, when the public defender was appointed.

A speedy trial was not denied the petitioner and the record amply supports the attorney general's theory that petitioner and his various attorneys, by their conduct, waived the statutory time within which a trial should take place, when the petitioner consented to the setting of the trial for July 6, 1955.

The fact, if it be a fact, that petitioner was taken before the grand jury without counsel and told to testify, cannot aid him in this proceeding. The petitioner pleaded guilty after a full explanation of all of the consequences which could flow from such a plea. The petitioner's petition seems to put great emphasis upon the contention that he was induced to plead guilty with the thought or promise that he was going to get a county jail sentence, and not a state prison term. To any one who has had any practice in the criminal courts, it is fairly obvious what took place in this matter. It is easily seen that there was some bargaining going on between the respective parties and their attorneys, and we have no doubt that it might well be true that the petitioner had good reason to believe, from what was told him by his own attorneys, that he could get a county jail sentence instead of going to the state prison with three prior convictions.

It is further clear from the record that no law enforcement officer, or officer of the court, made any statement or pursued any course of conduct which induced the petitioner to change his plea to that of guilty as to count II. ■ The public defender appointed by the court as the attorney for the petitioner is the same, so far as a proceeding of this character is concerned, as privately employed counsel. (*In re Hough*, 24 Cal.2d 522 [150 P.2d 448].) The fact that the petitioner might have believed, after his conference with his attorney, that he would get a lighter sentence by pleading guilty to one count, is of no avail to him in this instance.

The writ is denied.

White, P. J., and Doran, J., concurred.