[Crim. No. 17834. Second Dist., Div. Two. Mar. 16, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK GRAND, Defendant and Appellant.

28

---

[redacted]

---

## COUNSEL

Bernard G. Winsberg for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Kenneth C. Young, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.**—By a three count information appellant was charged with violating Penal Code sections 211 (robbery), 209 (kidnaping for purposes of robbery), and 245 (assault by means of force likely to produce great bodily injury). A prior felony conviction was alleged. Appellant initially entered a plea of not guilty to all the charges. By a subsequent plea he pleaded guilty to violating Penal Code section 245, and the two remaining counts against him were dismissed. He then made application for and was denied probation. Thereafter, he was sentenced to state prison for the term prescribed by law.

Appellant moved the court for a new trial and vacation of his plea of guilty on the grounds (1) that his attorney had promised him that he would not go to prison if he entered a guilty plea; (2) that the court had erred in failing to make more detailed inquiry "into the providence of the plea"; and (3) that at the time he entered his guilty plea his attorney failed to advise him that the admissibility of his confession was questonable. This motion was denied and the present appeal followed in due course after the trial court issued a certificate of probable cause pursuant to Penal Code section 1237.5, subdivision (b).

### Statement of the Facts

It was near 7 p.m. on the Halloween evening of October 31, 1968, when the complainant, James Lacher, drove into the driveway of his home on Wooster Avenue in Los Angeles. He was returning home from work where he was treasurer and administrative assistant to the president of The Forum, California Sports, Incorporated. As he stopped his car and opened the door to get out, two men ran up behind him, one carrying a shotgun.

The men ordered him to slide over onto the passenger's side of the front seat. Then they entered the car, one in front, the other in back. With the shotgun one of the men proceeded to beat Mr. Lacher several times. Mr. Lacher testified at the preliminary hearing as to what occurred next: "They asked me for the keys to the car. I pleaded with them, telling them I'd give them my money and they said, 'Do you have any money?' I said yes, and at this point I gave them my wallet and they again were asking me for the keys. I told them I dropped them when they first hit me. They continued to beat me until I was on the floorboard of the car underneath the dashboard. Then one of them searched around and found the keys."

They started the car, backed out of the driveway, and drove slowly away. One of the assailants continued to beat Mr. Lacher. Several blocks away the car was stopped, but the beating continued. At one point Mr.

Lacher's wrists were placed on the seat of the car and the shotgun brought down hard on them. Other blows were directed to his face, head and back.

Finally, the two men exited the car. They left Mr. Lacher in his car with wounds which required more than twenty sutures and which caused him to miss a week of work. Stolen were his wallet, containing $45, and several credit cards, and his attache case containing business papers.

Appellant was arrested and charged with arranging the brutal beating. It was alleged that he had hired the two assailants to attack Mr. Lacher. Through police investigation it was learned that a Miss Brenda Miller was a principal in the case. Anticipating that appellant might attempt to call Miss Miller, the police contacted her and with her permission placed an induction coil on her telephone so that they might record appellant's conversation.

From the police stationhouse appellant requested and was given permission to use the telephone. He gave the number to a police officer on duty who dialed it and then left appellant alone. As expected, his call was placed to Miss Miller.

The police officers at Miss Miller's residence attempted to record the conversation but were unable to do so when the tape on their recorder broke. One officer monitored the ensuing conversation, made notes concerning it, and testified at the preliminary hearing. In the course of the conversation appellant made statements which amounted to an outright confession. At one point he stated, "Why I had him beat up doesn't make any difference. My job's gone, you know." Appellant's guilty plea was made in the face of this evidence and on the advice of his counsel.

Appellant's notice of appeal states that he "appeals from the Court's denial on August 21, 1969 of defendant's motion for a new trial and motion to vacate his plea of guilty on constitutional grounds." ■ As the Attorney General correctly points out, a motion for a new trial subsequent to a plea of guilty is not an available remedy. (*People* v. *Beckett*, 262 Cal. App.2d 145, fn. 1 [68 Cal.Rptr. 464]; *People* v. *Ramos*, 80 Cal.App. 528, 531 [251 P. 941].) ■ And a motion to withdraw a plea of guilty must be made before judgment. (Pen. Code, § 1018.) Therefore, appellant's motion partakes of the nature of an application for the writ of error coram nobis. ■ The writ of error coram nobis is unavailable insofar as it is sought to review issues cognizable on appeal. (*People* v. *Thomas*, 52 Cal.2d 521, 527 [342 P.2d 889].) However, as the Attorney General further suggests, we shall resolve all possible doubts in appellant's favor

and treat his appeal as having been properly taken from the judgment and from the order denying his motion to withdraw his plea of guilty treated as a denial of an application for the writ of error coram nobis.

The three contentions now advanced by appellant on this appeal are the same as those which he urged in support of his motion for leave to withdraw his plea of guilty as above set forth. We find no merit in any of these contentions.

## I

In substance appellant's affidavits filed in support of his motion to set aside his plea of guilty stated that said plea was entered upon the advice and assurance of his own counsel that the outcome would be county jail time rather than a sentence to state prison. Appellant has submitted this ground of appeal upon the record and his affidavits which, as he states, do not "negate" his charge that his plea was made upon a promise of a lesser offense. However, there is absolutely nothing either in his affidavits or elsewhere in the record which even so much as suggests that there was any official action upon which he relied to induce him to plead guilty.

In fact, the record shows that appellant personally answered "yes" to each of the following questions put to him by the court: "Have you discussed this matter with your attorney . . .? Are you entering this plea freely and voluntarily? You understand that any sentence or punishment or probation, if it is granted, is at the discretion of the Court? You are pleading guilty to this offense because in truth and in fact you are guilty and for no other reason; is that correct?"

Appellant has merely shown that he pleaded guilty while relying upon the *alleged* erroneous advice of his own counsel that he would not be sentenced to state prison.

██ "In the absence of an allegation of state involvement, petitioner's allegation that counsel improperly induced him to enter a guilty plea does not state a ground for . . . relief. (See *In re Atchley,* 48 Cal.2d 408, 418 [310 P.2d 15]; *People* v. *Gilbert,* 25 Cal.2d 422, 443 [154 P.2d 657]; *In re Hough,* 24 Cal.2d 522, 533 [150 P.2d 448]; *People* v. *Ynostroza,* 105 Cal.App.2d 332, 333 [232 P.2d 913].)" (*In re Nunez,* 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998]; *People* v. *Keogh,* 265 Cal.App. 2d 470, 474 [71 Cal.Rptr. 367].)

"Under these authorities we are of the opinion that the petitioner under

the facts here was bound by his [plea] of guilty entered in the case then pending against him and may not have his [plea] set aside or vacated by reason of any act of his attorney in advising him respecting his defense in said action . . ." (*In re Hough,* 24 Cal.2d 522, 533 [150 P.2d 448]; see also, *In re Rose,* 62 Cal.2d 384 [42 Cal.Rptr. 236, 398 P.2d 428].)

In *People* v. *Caruso,* 174 Cal.App.2d 624 [345 P.2d 282], the appellant pleaded guilty to conspiracy to cheat and defraud, forgery and grand theft, on the advice of his counsel. He alleged that his plea was not actually acknowledging guilt but was reluctantly yielding to the influence of his own counsel. This court held, at pages 641-642: "The motion to withdraw the plea may be motivated by the defendant's knowledge [citation]; or well founded belief [citations] that the sentence he will receive will be substantially more onerous than that he anticipated at the time he entered the plea of guilty. The fact that the defendant is disappointed in the sentence he received following a plea of guilty presents no ground for the exercise of the judicial discretion to permit the plea of guilty to be withdrawn. [Citations.] A defendant charged with an offense cannot be permitted to gamble on the anticipated result of a plea of guilty and when disappointed in the outcome reestablish a right to trial. [Citations.] Nor is the fact that after plea but before sentence the defendant has become apprehensive regarding the anticipated sentence sufficient to compel the exercise of judicial discretion so as to permit the plea of guilty to be withdrawn. [Citation.] Nor may the defendant enter a plea of guilty confident that if by some fortuitous circumstance his chances of an acquittal are substantially improved, he may thereafter withdraw his guilty plea as of right. [Citation.]"

## II

Appellant argues that his plea of guilty was taken in violation of the rules laid down in *McCarthy* v. *United States,* 394 U.S. 459 [22 L.Ed.2d 418, 89 S.Ct. 1166]; *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], and *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

The guilty plea in the instant case was taken on March 13, 1969, prior to the date of the decision of *Boykin* v. *Alabama, supra,* 395 U.S. 238, on June 2, 1969. As the California Supreme Court stated in *In re Tahl, supra,* 1 Cal.3d 122, 133, "[W]e believe that *Boykin* v. *Alabama* and any new procedures dictated by that decision should be given only prospective application." (See also, *People* v. *Price,* 1 Cal.App.3d 982, 989 [82 Cal.Rptr. 55].) Citing no authority, appellant submits that since

his sentence was stayed by the court until August 1969, this latter date should be controlling rather than the date March 13, 1969, on which his plea of guilty was entered. We find no merit in this argument.

## III

Finally, appellant contends that his guilty plea was vitiated by his invalidly obtained confession. He asserts that his plea was entered without a knowing and intelligent waiver of his constitutional and legal rights since the record fails to show that he was made aware of the possible inadmissibility of his confession to Miss Miller on the telephone.

The validity of a guilty plea allegedly induced by an illegally obtained confession was discussed in *McMann* v. *Richardson,* 397 U.S. 759, 769-770 [25 L.Ed.2d 763, 772-773, 90 S.Ct. 1441], wherein it is stated that: "At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable.

"As we said in *Brady* v. *United States,* 397 U.S. at 756, 757, the decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the·facts, as he understands them, would be viewed by a court. If proved, would those facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

"That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing. . . . *In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.*" (Italics supplied.)

■ Moreover, as the preliminary hearing transcript reveals, appellant and his counsel were faced with the probability that the state would produce evidence more incriminating than the officer's record of the telephone conversation. While Miss Miller, an alleged principal, refused to testify at the hearing, reference was made to the fact that immunity proceedings were underway for her. Appellant's plea of guilty, therefore, quite obviously was prompted by the consideration of more than his own confession. The trial court properly denied his motion.

We conclude by quoting from *People* v. *Gannaro,* 216 Cal.App.2d 25, 29-30 [30 Cal.Rptr. 711]: "Appellant's conviction was the 'product' of his own plea of guilty, not of any unreasonable search and seizure. Where a defendant pleads guilty, he is convicted by his plea. [Citation.] A plea of guilty constitutes a conviction. [Citations.] Indeed, . . . 'a confession of the offense by the party charged, by a plea of guilty, is the highest kind of conviction which the case admits . . .' [Citation.] It is a settled rule that '[t]he plea of guilty constitutes an admission of every element entering into the offense charged, and constitutes a conclusive admission of defendant's guilt.' [Citations.]

"In the instant case, therefore, appellant conclusively admitted his offense and stood convicted on his plea. The prosecution was under no duty to prove that he committed the crime to which he entered the plea. [Citation.] Such issue was resolved by the plea. Proof of the corpus delicti was unnecessary [citations]. Appellant by his plea waived his right to any trial at all. [Citation.] Since his plea constituted his conviction and no evidence was required, he necessarily waived any right to question how evidence had been obtained just as fully and effectively as he waived any right to have his conviction reviewed on the merits. [Citation.]" (See also, 20 A.L.R.3d 724-747.)

In view of the foregoing authorities, it is unnecessary to discuss respondent's contention that the admissibility of appellant's confession is unquestionable in the light of *People* v. *Lopez,* 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Califano,* 5 Cal.App.3d 476, 480-

481 [85 Cal.Rptr. 292]; and *People* v. *Morgan,* 197 Cal.App.2d 90, 94 [16 Cal.Rptr. 838].

The appeal from the order denying motion for a new trial is dismissed; the order denying appellant's motion to vacate his plea of guilty is affirmed; the judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.