[Crim. No. 9441.   Second Dist., Div. Four.   Nov. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM ARTHUR PRICE, Defendant and Appellant.

**COUNSEL**

William Arthur Price, in pro. per., and Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**FILES, P.J.**—On August 12, 1963, an information was filed charging defendant with forcible rape (Pen. Code, § 261, subd. 3), and on August 15 he pleaded guilty. On September 6, 1963, he was sentenced to state prison. Inasmuch as defendant was under the age of 23 the trial court, acting under the authority of Penal Code section 1202b, specified that the minimum term would be six months. The maximum term prescribed by the Penal Code is life (§§ 264, 671), subject to determination by the Adult Authority (§§ 1168, 3020).

Defendant appealed from that judgment and, in accordance with the requirements of *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814], this court appointed counsel to represent him on appeal. The appointed attorney filed with this court a statement of the facts shown by the record, with citations to the transcript, and stated "We have very carefully examined and reviewed this record and can find no problem that we can properly present to this court which will be of help to appellant."

This court thereupon made its own examination of the record, wrote an opinion (which was filed but not published) and on September 28, 1965, affirmed the judgment.

On October 7, 1968, defendant filed with the California Supreme Court a petition for a writ of habeas corpus. On October 30, 1968, that court made the following order: "We treat the petition in the above entitled proceeding as an application to recall the remittitur in *People* v. *Price,* 2 Crim. 9441. The proceeding is transferred to the Court of Appeal, Second District, Division Four, with directions to recall its remittitur, vacate its judgment, and proceed in accord with *Anders* v. *California,* 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], and *People* v. *Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]."

In order to bring our handling of this appeal into compliance with the rules laid down in the *Anders* and *Feggans* cases, we appointed a new attorney to represent defendant. That attorney requested that the record be augmented by bringing up the transcript of the defendant's preliminary examination and the entire superior court file. The court so ordered. The attorney for defendant has now filed a brief and a supplemental brief arguing that the judgment should be reversed on three independent grounds. Defendant personally submitted another supplemental brief.

In this case, unlike most guilty plea appeals, we have a statement of facts in the augmented record. The transcript of the preliminary examination contains the testimony of the victim of the offense. She tells how she found herself in a garage with three men where she was first beaten and then raped by all three, one of whom was the defendant. Attached to the probation

report, which is in the superior court file, is an eight-page letter handwritten by defendant addressed to the judge who was to sentence him. This letter describes in detail the conduct of defendant and his companions in the hours immediately preceding the crime. It corroborates in all essentials the testimony given by the victim, together with a wealth of detail not mentioned by her. The letter explains that defendant went along with his two male companions "just for the show"; that when the victim yelled, "my reaction was to hit her." The point of the letter seems to be that after his companions "A.C." and "Roger" had had intercourse with the victim, defendant declined to do so, until the friends "kept nagging me & I gave in." Defendant said he knew he was wrong and he was sorry, that he had lived in fear ever since that event. The letter concludes:

"Well Mr. Wright I know you will probably make the right decision, but I hope you would take into consideration my hardships also.

"A.C. got aways & moved out of town. & Roger was sentenced 5 yrs. probation, that he does the first 180 days on the County Farm.

"Well the rest is up to us.

Truly yours

William A. Price"

We have now considered the record on appeal as augmented, the petition for habeas corpus and all of the briefs on file. The appeal and the petition for habeas corpus must be discussed separately. The appeal must be considered and decided upon the matters which were presented to the superior court whose judgment we review. (See *People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161].) The habeas corpus petition contains allegations of matters not in the trial record.

## *The Appeal*

■ Inasmuch as defendant filed his notice of appeal prior to the adoption of Penal Code section 1237.5 in 1965, defendant is not required to have a certificate of probable cause in order to appeal after the guilty plea in this case. (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 281, fn. 8 [61 Cal.Rptr. 644, 431 P.2d 228].)

■ Defendant's first contention is that he did not receive effective representation by counsel in the superior court. The record shows that defendant was represented by the public defender at all stages of the proceeding. There is absolutely nothing in that record to suggest that anyone could have given defendant any better representation than he received.

■ Defendant also contends that the superior court lacked jurisdiction to hear this case because he was "under the jurisdiction of the juvenile court" at the time he pleaded guilty and was sentenced. The record shows that defendant was just short of his 20th birthday when he was sentenced. In 1958, at age 14, he had been made a ward of the juvenile court after a finding that he had committed a burglary and an assault with a deadly weapon. After having first been placed on probation, he was committed to a forestry camp, from which he was removed for disciplinary reasons, and on December 1, 1959, he was committed to the Youth Authority. After that he was paroled in 1960, recommitted for violation of parole in 1961, and paroled again in 1962. He was still on parole, under the Youth Authority commitment, when he committed the 1963 rape. It seems to be defendant's argument that he could not be prosecuted as an adult for this 1963 offense until the juvenile court remanded him to the superior court for adult proceedings. No authority supports that position.

Welfare and Institutions Code section 603 provides that no court shall have jurisdiction to try a person for a crime committed under age 18 unless the juvenile court has so ordered. This case does not come within that section because defendant was over 19 when he committed the rape.

Under Welfare and Institutions Code section 604, subdivision (b), a juvenile 18 or over may be prosecuted as an adult unless the superior court, in its discretion, decides to certify the case to the juvenile court. (See *People v. Shipp* (1963) 59 Cal.2d 845, 852 [31 Cal.Rptr. 457, 382 P.2d 577].)

Welfare and Institutions Code section 607 provides that the juvenile court may retain jurisdiction over its ward until he attains the age of 21. The purpose of this is to enable the juvenile court to carry out its program of rehabilitation and training without interference either by parents claiming custody or by conflicting custodial orders made on the civil side of the court. Thus, it has been held that the juvenile court's custody is not affected by a subsequent order of the superior court in an adoption proceeding. (See *Marr v. Superior Court* (1952) 114 Cal.App.2d 527 [250 P.2d 739].) Furthermore, the orders of the juvenile court are not subject to modification by other departments of the superior court. (*People v. Sanchez* (1942) 21 Cal.2d 466, 471 [132 P.2d 108].)

However, when a ward of the court age 18 or over commits a new felony offense, there is nothing in the juvenile court law which insulates him from prosecution, conviction and commitment through the processes of the criminal courts. The juvenile court's custody, which grew out of some previous adjudication, need not be formally terminated as a prerequisite to such prosecution.

■ Defendant's other principal contention is that his guilty plea was invalid because the record contains no affirmative showing that he had voluntarily and intelligently waived his constitutional privilege against self-crimination, and his rights to a jury trial and to confrontation by witnesses.

The record shows that, following the preliminary examination (where defendant had been represented by a public defender), an information was filed in the superior court, defendant was arraigned and the public defender appointed to defend him in that court. Three days later he appeared in open court with counsel and orally pleaded guilty. Under the law in effect at that time, there was no requirement that any special admonition be given by the court when accepting a plea of guilty from a defendant represented by counsel. (*People* v. *Mendez* (1945) 27 Cal.2d 20, 22 [161 P.2d 929].) Although courts did on some occasions interrogate a defendant personally as to his understanding, it was considered the function of counsel to advise his client as to the consequences of the plea. (See *People* v. *Emigh* (1959) 174 Cal.App.2d 392, 395 [344 P.2d 851]; *People* v. *Loeber* (1958) 158 Cal.App.2d 730, 735 [323 P.2d 136]; cf. *People* v. *Coogler* (1969) 71 Cal.2d 153, 168-169 [77 Cal.Rptr. 790, 454 P.2d 686].)

Thus, although under long-established principles, a plea of guilty may not be received unless the court finds it has been tendered voluntarily and intelligently, courts have made such a finding upon the kind of record which was made in this case. Courts have long assumed that, absent special circumstances, when a defendant has been formally arraigned and furnished a copy of the accusatory pleading and a transcript of the evidence on which it was based, and has had the opportunity to consult with his counsel, and then returns to court on a subsequent day, and in open court, personally, in the presence of counsel, states that he pleads guilty, the court may find that the plea is voluntary and intelligent. If counsel has performed his duties to his client, he will have fully advised the defendant of all he needed to know concerning the nature of the charges, the application of the law to the facts, the possibilities for a successful defense, and the consequences of a guilty plea. And such advice given by counsel would ordinarily be based upon the attorney's investigation, and upon communications made to him in confidence, which could never be made a part of the record of the court.

Thus where a defendant represented by counsel offers personally to plead guilty in open court, the court may reasonably conclude that he is voluntarily and intelligently waiving his privilege against self-crimination and his rights to confrontation by witnesses and a trial by jury. A plea received under these circumstances is not, under the law existing prior to June 1969, subject to attack on direct appeal.

During the pendency of this reinstated appeal, on June 2, 1969, the Supreme Court of the United States handed down its opinion in *Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], which supplanted the established California procedure with a new rule of constitutional law. Among other things, the *Boykin* case holds that a guilty plea may not be received in a state court unless some affirmative showing is made upon the record that the plea was intelligent and voluntary. But this portion of the *Boykin* decision, which requires the making of a far more explicit record in the trial court, has been held to apply only to cases in which pleas were entered after June 2, 1969. (*In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].)

In the case at bench defendant's plea, received in 1963, is not subject to attack upon direct appeal.

### The Habeas Corpus Proceeding

The petition for habeas corpus lists three grounds upon which defendant claims his detention is illegal. They are: "(a) Petitioner Was interrogated in Violation of his Rights.

(b) Counsel advised Petitioner to enter an unlawful plea of 'Guilty'.

(c) Superior court Had no Jurisdiction upon which to try Petitioner."

In considering whether defendant has stated any facts which would entitle him to an evidentiary hearing on this petition, we consider the allegations of the petition in the light of the whole record which is before the court.

■ (a) With respect to his first ground—that he had been interrogated—there is nothing in the petition or in the record on appeal to indicate that any statement made by him prior to his guilty plea was used against him. Defendant does not assert that the allegedly illegal interrogation prejudiced him or induced him to plead guilty. We note that in the statement which accompanied the petition for habeas corpus, defendant says he was forced "to write out a statement with signature, in [*sic*] which petitioner did, but didn't admit guilt." This shows no ground for setting aside the judgment.

■ (b) The particulars of defendant's second ground are set forth by him in the following language: "Petitioner informed the Public Defender of his Youth Authority position. Counsel then informed Petitioner that his Co-Defendant Roger S. Williams, received a probation sentence of six months in the county Jail for entering a Plea of Guilty, and that petitioner would

receive the same treatment. Counsel also stated that he knew the Judge And that he, (Counsel) was a Personal friend of the Judge, and was quite sure of the sentence as that was the unwritten policy in matters where two (2) defendants were convicted of the same offense. At no time did Counsel advise the petitioner that a plea of Guilty might result in a Prison sentence, and failed to present the facts of responsibility in being counsel. After petitioner entered plea of Guilty on or about Aug. 23, 1963; Petitioners Parole Officer informed him that his parole was revoked and he would return Petitioner to a Youth Authority Institution, upon completion of his now pending matter in court."

The opinion allegedly expressed by the public defender was his opinion, and there is no claim that it was not an honest expression of counsel's opinion as to the probable sentence. There is no claim that any advice or promise came from the prosecutor or the court. Defendant was entitled to his counsel's evaluation before pleading guilty. Although defendant asserts that his counsel did not advise him "that a plea of guilty might result in a prison sentence," defendant does not state that he was unaware that forcible rape was punishable by imprisonment in state prison, and that probation was discretionary with the court.

Whether an attorney will advise or allow his client to plead guilty must depend in part upon what the client has told the attorney about himself. Defendant's petition does not purport to disclose all of his communications with his attorney.

The probation report discloses defendant's continuous involvement with the law during the five years immediately preceding this prosecution. Much light is shed upon the guilty plea by the eight-page handwritten letter from defendant to Judge Wright which is attached to the probation report, and described in the statement of facts above. If defendant told his own attorney what he told the court in that letter, it would have been clear enough to counsel that defendant's best hope was that the court might be lenient. The reporter's transcript shows that when defendant was arraigned for judgment his attorney made an argument calling attention to some mitigating circumstances and including this statement: "Of course there is always a question where you have an offense of this nature which is very serious and the defendant is fully aware of it. He was aware of it at the time he entered the plea of guilty what could happen to him and what might well happen to him. The fact that there was a co-defendant with him who was the same age at the time, was given a probationary type sentence, I don't believe in any degree influenced him in entering a plea to this. He felt he was responsible for his conduct and he entered a plea of guilty to it. With this in mind I think he would be receptive to the Youth Authority program under an adult commitment to that facility."

The trial judge then reviewed defendant's record and commented on the details of the offense. After further colloquy with counsel the court pronounced sentence.

Against this record, defendant's short and incomplete statement of what his attorney told him cannot be construed as any allegation of facts which would support any finding either that defendant lacked competent counsel or that his plea was not voluntarily given after proper advice from counsel. ■ This is a proper case for the application of the rule that "Mere advice or assurance by defense counsel will not vitiate a plea entered in reliance thereon." (*People* v. *Hines* (1967) 66 Cal.2d 348, 357 [57 Cal.Rptr. 757, 425 P.2d 557].)

(c) Defendant's third contention about the superior court's jurisdiction is the same point which was considered and rejected in the discussion of his appeal.

The judgment is affirmed. The petition for habeas corpus is denied.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 14, 1970.